[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action, tried to the court, in which the plaintiff is suing for breach of contract, the issue is whether or not the parties intended to bind themselves before the execution of a formal contract.[1]
The facts, as found by this court, are as follows:
In or about November, 1992 the parties negotiated respecting a retirement package for the plaintiff due to a slow down in the defendant's business. On November 6, 1992 defendant set forth in a letter to plaintiff an outline of such a package: (1) plaintiff to pay into defendant's 401K retirement plan a lump sum to increase the total to $50,000; (2) defendant to be allowed to keep a company car, (3) defendant to retire by the end of April 1993, (4) plaintiff to pay to defendant a consultant fee of $200 a month until the end of 1993. The letter ended, "If our proposals are acceptable to you, we will request our company attorney to prepare a formal agreement and release concerning our proposal CT Page 6469 and affording protection of the company's interests with respect to its customers and commercial confidentialities."
On January 4, 1993, plaintiff wrote to defendant reiterating its proposals (1), (2), and (3) above and changed (4) to read that it would pay a sales consultancy fee of $1200 per month, reviewed annually, from the end of April, 1993, and added (5) that plaintiff would pay 50% of defendant's existing medical benefits while he continued as a consultant. That letter further stated, "We will also request our company attorney to prepare a formal release agreement covering the above, and affording protection of the company's interests with regard to its customer and commercial confidentiality."
The parties continued to negotiate and on March 30, 1993, defendant sent to plaintiff a letter stating it was withdrawing all previous offers and making a "final offer": (1) severance pay of $25,000; (2) plaintiff to keep company car; (3) consultant fee of $1,200 per month; (4) plaintiff to leave the company by April 30, 1993; (5) plaintiff not to work for, promote B.C.P. repairs, or manufacture for any other company; (6) defendant to sign a formal agreement and release covering these proposals, and (7) plaintiff to contact only new clients and not existing customers.
On April 13, 1993, plaintiff wrote to defendant confirming "my acceptance of the terms under the pending `Final Offer.'"
On April 21, 1993, defendant's president faxed a memo to defendant's counsel advising him that plaintiff had accepted the terms of the last offer and instructing him to prepare the release and consultancy agreement.
On May 7, 1993, defendant's president wrote to plaintiff enclosing an "Agreement, Release, and Waiver" and an "Independent Sales Representative Agreement", both in draft form and both unsigned by the defendant. In that letter, defendant's president said, "Please advise any questions so that we can prepare documents in execution form." The Agreement, Release and Waiver contained the provisions of (1) through (4) in the March 30, 1993 letter and further set forth specific language prohibiting disclosure of company confidential information and competition with the company within a given area, and releasing the company from all claims CT Page 6470 by plaintiff, including wrongful discharge and age discrimination. The Sales Representative Agreement set forth the specifics of the sales representative arrangement between the parties.
On May 26, 1993, plaintiff wrote to defendant accepting the terms, covenants and conditions contained in the Agreement, Release and Waiver, dated May 7, 1993 and also indicated his wish to enter into the Sales Representative Agreement.
Not hearing from defendant, plaintiff wrote to defendant on July 16, 1993 "formally requesting action on my retirement agreement prepared by your attorney and signed by me on the 26th of May 1993."
On August 11, 1993 defendant wrote to plaintiff noting, "the documents that we forwarded to you were merely drafts of proposed agreements and not final execution documents. The fact you have chosen to confirm the terms, covenants and conditions contained in the documents is not to be construed as binding upon PSL Energy Services, Inc." The letter went on to assert that plaintiff and his wife had been illegally competing with the defendant which represented unconscionable conduct. "Accordingly", the letter noted, "we elected not to execute the agreement, thereby rending it null, void and of no effect."
At the trial plaintiff testified that he intended his letter of April 13, 1993, accepting defendant's final offer of March 30, 1993, to constitute a meeting of the minds of the parties, but acknowledged that he expected a formal written contract would be entered into.
The question thus presented is whether or not the correspondence between the parties created a binding contract. The plaintiff contends the parties had a complete meeting of the minds on all the terms and a contract did result. The defendant contends it never intended to be bound until a formal written agreement had been executed and since none was, no contract resulted.
The law is well settled: "Whether the parties intended legally to bind themselves prior to the execution of a formal contract is to be determined from (1) the language used, (2) CT Page 6471 the circumstances surrounding the transaction, and (3) the purpose that they sought to accomplish." Fowler v. Weiss15 Conn. App. 690, 693 (1988), see also Klein v. Chatfield,166 Conn. 76, 80 (1974); Atlantic Terra Cotta Co. v. ChesapeakeTerra Cotta Co., 96 Conn. 88, 96 (1921).
This Court concludes that both the language used in the correspondence and the circumstances surrounding the transaction reveal that the parties understood that no contract was to be finalized until a formal document was I signed. Defendant made that condition plain in its letters and in sending the plaintiff an unsigned draft of the agreements. Plaintiff indicated he understood that condition precedent by his letter of July 16, 1993, requesting defendant act on the retirement agreement prepared by defendant's attorney, concurred in by plaintiff, but not yet signed by defendant. Moreover, he conceded at trial he expected a formal contract would have to be executed.
As a consequence, this Court determines that no enforceable contract was entered into by the parties, and plaintiff having failed to prove his cause of action, judgment may enter for the defendant.
R. Satter, S.J.R.