[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
 STATEMENT OF THE CASE
This is an action instituted by the plaintiffs, Leslie Srager and Joan Srager, against the defendant, Kenneth Koenig. The plaintiffs seek damages for the defendant's alleged breach of a contract to sell certain real property to the plaintiffs. The trial of the case commenced on January 15, 1997, at which time, by agreement of the parties, the case was bifurcated so that the issues regarding liability and damages would be tried separately. The court makes the following findings on the issue of liability.
In February 1992 Elliot Koenig, Evelyn Koenig and the defendant Kenneth Koenig [the "Koenigs"] listed for sale a condominium complex they owned at 1657, 1662 and 1664 Fairfield Beach Road, Fairfield, Connecticut.
On February 17, 1992, the plaintiffs executed a document entitled "Binder of Sale (Contract)" indicating their desire to purchase the condominium complex for $900,000. (Exhibit 6.) This CT Page 7866 binder was prepared by the plaintiffs' real estate agent, Lee Attenberg. On or about February 24, 1992, the Koenigs also signed the binder agreeing to its terms. The relevant terms of the binder may be summarized as follows. The plaintiffs agreed to purchase the condominium complex for $900,000. An initial deposit of $6,500 was required to be paid when the plaintiffs signed the binder and this initial deposit was paid by them at that time. Within fourteen days thereafter, or by March 10, 1992, the binder required the parties to sign a contract for sale, and at that time the plaintiffs were required to make another $83,500 payment representing payment of the remaining balance of the 10% deposit. The balance of the purchase price was to be paid in cash or certified check upon delivery of the deed. The binder also contained a mortgage contingency clause which provided that the agreement was subject to the buyers' obtaining a commitment for a loan secured by a first mortgage on the condominium complex in the amount of $720,000, amortized over 30 years. This loan commitment had to be obtained by the plaintiffs "within four weeks after acceptance" of the binder or by March 10, 1992. The closing of title was to take place "sixty days after contracts signing." Finally, the binder set forth the following provision in bold letters:
 "THIS AGREEMENT IS TO REMAIN IN FORCE AND EFFECT AND CONSTITUTES A CONTRACT BETWEEN THE PARTIES HERETO UNLESS OR UNTIL SUPERSEDED BY FURTHER CONTRACT BETWEEN PARTIES INCORPORATING DETAILED DESCRIPTION AS HEREINABOVE PROVIDED."
There is no dispute between the parties that they agreed to an extension until March 24, 1992 for the signing of the final sale contract. A sale contract was not signed by that date, but as discussed below, the parties continued to negotiate the terms of the contract after March 24, 1992.
The plaintiffs were represented by Attorney Andrew Brucker and the Koenigs were represented by Robert Ashkins. On February 26, 1992, Attorney Brucker received a proposed contract for sale of the property from Attorney Ashkins. In this proposed contract prepared by Ashkins, the date by which plaintiffs were required to obtain the commitment for the mortgage loan was extended to April 1, 1992. Through a cover letter dated March 23, 1992, Attorney Brucker returned this proposed contract to Attorney Ashkins with changes and an additional rider. The two attorneys talked about the terms of the contract between March 23rd and CT Page 7867 March 30th, when on or about the latter date, Attorney Ashkins received another draft of the contract signed by the plaintiffs with a check for the balance of the deposit. (Exhibit 10). On March 30, 1992, during their discussions about the transaction, Ashkins informed Brucker that defendant Koenig had a mortgage on the property that was maturing on May 2, 1992 and that the final details regarding the sale had to be completed promptly.
Also on March 30, 1992, a back-up binder to purchase 1657 Fairfield Beach Road only was signed by a Stephen Lerner. In this binder, Lerner offered to purchase 1657 Fairfield Beach Road for $755,000 with no contingencies. Defendant Koenig was informed about Lerner's binder on March 30, 1992.
On April 5, 1992, Attorney Ashkins reviewed the March 30, 1992 draft contract (Exhibit 10) with defendant Koenig in detail for the first time. Koenig realized at that time that this draft contract pushed the mortgage contingency deadline date from April 1, 1992, as proposed in Ashkin's first draft, to April 15, 1992. Koenig objected to this change and insisted that the mortgage contingency provision be removed from the contract altogether. He was concerned that an April 15, 1992 mortgage commitment date might delay the closing date and create the possibility that the sale proceeds might not be available to satisfy his mortgage obligation maturing on May 2, 1992. He was also aware of the Lerner binder which was made without any contingencies. After discussing the matter with Attorney Ashkins, the Koenigs signed the March 30, 1992 revised version of the contract, but defendant Koenig specifically instructed Ashkins that the contract should not be released unless the mortgage contingency clause was removed.
On April 6, 1992, Ashkins informed Brucker that there was a back up binder and that Koenig wanted the mortgage contingency clause removed. Although there is some dispute between the parties about exactly what was said during this conversation, Brucker understood from the conversation that unless the mortgage contingency clause was removed or the deal "sweetened", the sale would not go forward.
The plaintiffs were unwilling to remove the mortgage contingency clause from the agreement, but the plaintiff, Leslie Srager was willing to pursue an earlier suggestion that a bridge loan be obtained from Sam Meshberg, defendant Koenig's son-in-law. If Meshberg would provide this bridge loan to the CT Page 7868 plaintiffs, than the plaintiffs were willing to remove the mortgage contingency clause. However, the parties' efforts to agree on the terms of this bridge loan failed.
On or about April 13, 1992, Leslie Srager received a commitment from Citibank to loan plaintiffs $320,000 to be secured by a mortgage on the condominium complex. The commitment letter also indicated that Citibank would loan plaintiffs an additional $400,000, home equity loan to be secured on the plaintiffs' present home at 2030 Merwins Lane, Fairfield, Connecticut. However, unbeknownst to the plaintiffs, four days earlier, on April 9, 1992, defendant Koenig sold 1657 Fairfield Beach Road to Lerner for $760,000.
Neither Brucker nor plaintiffs were informed that the negotiations were being terminated or that the property was being sold to Lerner. Lerner himself was informed about the sale the day before it occurred. The closing took place on the basis of Lerner's binder without an additional contract. The closing was done by new counsel representing Koenig, since Ashkins declined to do so. Koenig testified that the haste of the closing was based on Lerner's desire to close quickly, but the evidence fails to support this claim. The evidence indicates that Koenig closed hastily so that the plaintiffs would not have the opportunity to complain or respond to his actions and so that he would be sure that he would have the funds necessary to meet his mortgage obligation that was soon coming due.
DISCUSSION
 I
As a preliminary procedural argument, the defendant asserts that he is entitled to judgment because the plaintiffs failed to join indispensable parties.
As discussed above, the sellers of the condominium complex in question were Elliot Koenig, Evelyn Koenig and the defendant, Kenneth Koenig. For procedural reasons not pertinent here, Elliot and Evelyn are not parties to the present lawsuit and have been sued in a separate action. Neither party sought to consolidate these actions.
Defendant Koenig now argues that judgment should enter in his favor because Elliot and Evelyn Koenig are indispensable parties CT Page 7869 to this action and were not joined as defendants. Although this claim was not raised through a motion to strike under § 152 of the Practice Book as required by § 198 of the Practice Book, the Court will address this issue because of its relation to the proper disposition of the present action. See Hilton v.New Haven, 233 Conn. 701, 723, 661 A.2d 973 (1995).
A plaintiff's "failure to join. . . an indispensable party [does] not implicate the trial court's subject matter jurisdiction. . . . Nevertheless, a court may refuse to proceed with litigation if a claim cannot properly be adjudicated without the presence of those indispensable persons whose substantive rights and interests will be necessarily and materially affected by its outcome." Id., 721. "Parties are considered indispensable when they not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such condition that its final [disposition] may be . . . inconsistent with equity and good conscience. . . . Indispensable parties must be joined because due process principles make it essential that [such parties] be given notice and an opportunity to protect [their] interests by making [them] a party to the [action]. . . . Necessary parties, in contrast, are those [p]ersons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. . . .[B]ut if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties." (Citations omitted; internal quotation marks omitted.) Raph v. Vogeler, 45 Conn. App. 56, 59, (1997).
In the present action, the plaintiffs seek only monetary damages against the defendant Kenneth Koenig for his alleged breach of contract. Any decision rendered against him will not be binding against Elliot and Evelyn Koenig; and the interests of Elliot and Evelyn Koenig will not be affected by any such judgment. See generally Goodman v. Bank of Boston Connecticut,27 Conn. App. 333, 343, 606 A.2d 994 (1992). Accordingly, Elliot and Evelyn Koenig are not indispensable parties and the defendant Koenig is not entitled to judgment on this basis. Judicial economy may have supported the joinder of these individuals, and CT Page 7870 the Court does not countenance the piece meal manner chosen by the parties to adjudicate these disputes. Nevertheless, this Court's jurisdiction is not implicated by the failure to join Elliot and Evelyn Koenig, and under the circumstances presented, the interests of justice are served by a final disposition of this action.
 II
The plaintiffs' one count complaint is based entirely on the February 17, 1992 binder. The plaintiffs allege that this binder was a binding contract for the sale of the property and that defendant Koenig breached this contract by selling 1657 Fairfield Beach Road to Lerner.
In response, defendant Koenig asserts numerous reasons why the contract cannot be viewed as a legally enforceable contract for the sale of the property. The defendant argues that the binder authorized the parties to proceed with the sale only if they agreed to a superseding contract. To support this position, the defendant contends that the binder fails to satisfy the statute of frauds. Alternatively, the defendant argues that even if the binder were viewed as a binding contract to sell the premises, the plaintiffs failed to satisfy the contingencies required under the binder.
Thus, this case presents a recurring issue concerning the legal effect of a binder for the sale of real estate which is prepared by a realtor and which in some way contemplates a further contract to be negotiated by the parties. The precise question is whether the binder constitutes a binding sale contract or merely represents an agreement to negotiate such a contract. It is frequently difficult to interpret such real estate binders because they often contain conflicting language regarding the requirement for superseding sale contracts. These interpretation problems in turn, cause confusion and disputes between the parties to the agreement.[1]
Whether the binder bound the parties to consummate the sale of the property is largely a question of intent. The binder will be unenforceable for this purpose if the intent of the parties was that they would not become bound to the sale until the execution of a formal contract. See Fowler v. Weiss,15 Conn. App. 690, 546 A.2d 231, cert. denied, 209 Conn. 814,550 A.2d 1082 (1988). Stated differently, if the execution of a formal CT Page 7871 contract was an essential term of the agreement, the parties would not be bound to proceed with the sale in the absence of this contract even if all the other material terms of the contract were agreed upon. On the other hand, cases also hold that if all the material terms have been agreed upon, a court may be able to infer that the formal contract merely represents a memorial of the agreement already finalized by the parties' mutual assent. See, e.g., H. B. Zachery Co. v. O'Brien,378 F.2d 423 (10th Cir. 1967).
To determine whether the binder is a binding sale contract, the court must first look at the plain meaning of the language used in the binder itself. "Whether the parties intended legally to bind themselves prior to the execution of a formal contact is to be determined from (1) the language used, (2) the circumstances surrounding the transaction, and (3) the purpose that they sought to accomplish." Fowler v. Weiss, supra,15 Conn. App. 693.
Additionally, in order for the binder to be an enforceable contract to sell real property, this agreement must satisfy the statute of frauds:
 [t]he requirements of a memorandum of sale to satisfy the statute of frauds in this State are too well established to require extended consideration. It must state the contract between the parties with such certainty that the essentials of the contract can be determined from the memorandum itself without the aid of parol proof, either by direct statement or by reference therein to some other writing or thing certain; and these essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement.
(Citations omitted) Santoro v. Mack, 108 Conn. 683, 687-88,145 A. 273 (1929).
In the instant case, the parties to the contract and the total purchase price are identified. The property is not described by its legal description, but its identification as being "1657/1662/1664 Fairfield Beach Road" is sufficient to satisfy the statute of frauds. See generally, Foster v. Civale,134 Conn. 469, 472, 58 A.2d 520 (1948). CT Page 7872
The date on which the closing of title was to take place is a crucial factor in determining whether the binder represents a binding sale contract and whether the statute of frauds is satisfied. This issue is unclear under the language of the binder and hotly disputed by the parties. The binder states that "closing of title will be at the office of sellers' attorney 60 days after contracts signing." The plaintiffs maintain that this phrase means that the closing is to be held sixty days after the signing of the binder. The defendant, on the other hand, contends that this phrase means that the closing is to be held sixty days after the signing of a formal, superseding contract. If the defendant's interpretation is correct, the closing date under the binder would entirely be based on the execution of a superseding contract and would evidence the parties' intent that they would only be bound to the sale if a superseding contract was signed.
Neither party offered any direct evidence at trial which unequivocally resolved this dispute regarding the closing date. The Court finds that the overall circumstances of the transaction support the plaintiffs' position. Defendant Koenig was anxiously concerned about closing the sale early in order to use the sale proceeds to satisfy his mortgage obligation that came due on May 2, 1992. If the sale were scheduled sixty days after the signing of the a superseding contract (and the superseding contract was required to be signed within "14 banking days after acceptance" of the binder), then the closing would be scheduled well beyond May 2, 1992, contrary to the defendant's desire. The facts establish that the Koenigs accepted the binder on or about February 24, 1992 and sixty days from this date would have required the closing to take place on April 24, 1992. Ashkin's initial draft of the contract proposed April 29, 1992 as the closing date. (Exhibit 7). Thus the court finds that the parties intended to close the sale in April 1992 and this finding supports the view that the binder required the closing to be within 60 days from the parties' execution of the binder.
The language of the binder is equally unclear and ambiguous about whether a superseding contract was required in order for the sale to take place. The defendant argues that the binder explicitly requires the execution of a superseding contract by the following language:
Contract of sale to be signed, and remainder of 10% CT Page 7873 deposit to be made, on or before 14 banking days after acceptance. (Emphasis added.)
In response, the plaintiffs emphasize the following language set out at the end of the binder in bold print:
 THIS AGREEMENT IS TO REMAIN IN FORCE AND EFFECT AND CONSTITUTE A CONTRACT BETWEEN THE PARTIES HERETO UNLESS OR UNTIL SUPERSEDED BY FURTHER CONTRACT BETWEEN PARTIES INCORPORATING DETAILED DESCRIPTION AS HEREINABOVE PROVIDED. (Capitalization in Original)
Thus, on one hand, the binder states that a superseding "contract of sale" is to be signed, but on the other hand, the binder states that it is a contract between the parties and shall remain so "unless or until" a superseding contract is signed. Again, the arguments and evidence submitted by the parties provide little assistance about how this conflicting language should be construed.
The plaintiffs argue that the binder language requiring the signing of a formal contract is a "promise" rather than a "condition" of the parties' agreement, but this legalistic distinction, whether it is accurate or not, does not conclusively establish whether the parties, under all of the circumstances,intended to be bound to consummate the sale only by a superseding contract.
The defendant's position is that the binder's bold face language relied on by the plaintiffs merely reflects that the binder binds the parties only until the supplemental contract is signed, which was required to be signed "within 60 days" of the sellers' signing of the binder. Stated differently, the "unless or until" language reflects the parties' intent to be bound by this agreement to create a binding sale contract. This seemingly sensible interpretation appears to comport more consistently with the typical use of real estate binders — to preclude the seller from selling the property to someone else for a particular time period while the parties in good faith negotiate the final terms of the sale in accordance with the terms and conditions outlined in the binder. See generally, Atlantic Terra Cotta Co. v.Chesapeake Terra Cotta Co., 96 Conn. 88, 100, 113 A. 156 (1921) ("It is everywhere agreed to be possible for parties to enter into a binding informal or oral agreement to execute a written contract"); Williston On Contracts (4th Ed) § 4.8, p. 299 CT Page 7874 ("Parties may enter into a binding agreement to execute a written contract"). The general rule is that an agreement to agree is too indefinite to be legally binding when it requires a superseding contract the terms of which must be negotiated. See Fowler v.Weiss, supra; see generally, 17A Am.Jur.2d. Contracts, § 35. However, even such an agreement requiring the parties to negotiate a subsequent contract may nevertheless impose preliminary obligations on the parties if that is their intention. In the present case the parties have not specifically addressed what legal obligations, if any, would arise under the binder as an "agreement to agree", the evidence and arguments being directed to whether the binder is enforceable as a complete contract for the sale of the property.[2]
It should also be noted that the binder states that the plaintiffs were required to pay the $83,500 balance of the deposit when the superseding contract was signed. The contemplated payment of the significant portion of the deposit only upon the signing of the superseding contract further points to the parties' intention to be bound to the sale only by this contract. See Fowler v. Weiss, supra, 15 Conn. App. 695.
The extensive negotiations about the terms of the formal sale contract suggest that the parties' did not consider themselves bound to the deal without further agreements. Although plaintiff Leslie Srager testified that he considered the defendant bound to sell the property on the basis of the binder alone, if this were actually the case, the plaintiffs could have terminated all negotiations, rejected all undesirable terms inconsistent with the binder, and insisted on a closing based solely on the binder. The plaintiffs did not proceed in this manner as evidenced by the continued back and forth nature of the negotiations.
In summary, the plaintiffs have the burden to prove by a preponderance of the evidence that the binder represents a binding contract for the sale of the property. Ambiguities of the binder, executed by the plaintiffs' agent, must be construed adversely to the plaintiffs. See Cameron v. Avonridge, Inc.,3 Conn. App. 230, 233, 486 A.2d 661 (1985). On balance, considering the ambiguous language of the binder, the conduct of the parties, and the credibility of the witnesses testifying on this issue, the Court finds that the most reasonable construction of the binder is that the binder required the parties to consummate the sale only on the basis of a superseding sale contract and the CT Page 7875 binder itself was not a contract for the sale of the property.[3]
 III
In addition, assuming arguendo that the binder represents a contract for the sale of the property, the plaintiffs cannot prevail because they failed to comply with its terms. There is no dispute that the binder contained a mortgage contingency clause stating that the agreement was subject to the plaintiffs acquiring a commitment for a loan within "4 weeks after acceptance" of the binder, or by March 24, 1992. The parties discussed, but never agreed to an extension of this deadline date. The plaintiffs' argument that the parties agreed to extend the mortgage contingency deadline date to April 15, 1992 is contrary to the evidence.
The defendant, through Attorney Ashkin's proposed sale contract (Exhibit 7), offered to extend the binder's March 24, 1992 mortgage contingency date to April 1, 1992; the plaintiffs, through Brucker's subsequent, proposed sale contract (Exhibit 10), made a counter offer to extend the mortgage contingency date to April 15, 1992. The defendant rejected this April 15, 1992 date and then insisted on the removal of the mortgage contingency clause altogether. The plaintiffs refused to accept an agreement without a mortgage contingency clause. Thus the plaintiffs did not meet the mortgage contingency deadline date in the binder and the parties failed to agree on the terms of a new mortgage contingency clause. The plaintiffs cannot insist on the enforcement of a contract and then select what parts should be enforced and what parts should be ignored.
The plaintiffs argue that as a matter of law, their failure to comply with the mortgage contingency clause is not an issue about which the defendant may complain. The plaintiffs correctly note that a mortgage contingency clause exists primarily for the benefit of the buyer and may be waived by the buyer. However, this does not mean that the seller has no interest in this provision, especially when the buyers, as in this case, refused to waive the provision.
In a transaction to buy real property, the seller has an interest in the mortgage contingency clause because the clause operates to verify for the seller that the buyer has secured the financing necessary to purchase the property. Moreover, the date CT Page 7876 by which the mortgage commitment must be obtained by the buyer is important to the seller because this date will affect when the closing may be held. As in this case, the date to acquire the commitment will be scheduled prior to the date of closing because a mortgage commitment letter will often have conditions which must be satisfied prior to the actual release of the funds. This delay may not always exist or be significant, but it was a legitimate concern of defendant Koenig as the proposed deadline dates of the mortgage contingency clause were pushed back. The fact that the plaintiffs were financially "capable" to close without a mortgage is irrelevant because they refused to close without the mortgage contingency clause when asked, and they would not have been able to liquidate sufficient assets to close within the time periods at issue.
In short, once the mortgage contingency date of the binder passed, the plaintiffs could not unilaterally impose on the defendant another agreement having a new mortgage contingency clause with a new deadline date. The parties sought to negotiate an agreement on this issue but failed.
Since the plaintiffs' cause of action is solely premised on the claim that the binder is a sale contract making the defendant liable for his failure to sell the property to them, and in that the court has found that the binder is not a contract for sale imposing any such duty on the defendant, judgment shall enter in the defendant's favor.
CONCLUSION
Therefore, for all the foregoing reasons, judgment enters in favor of the defendant.
STEVENS, JUDGE