## IRWIN DONENFELD *v.* DREW FRIEDMAN ET AL.
## (AC 23627)

Dranginis, Bishop and Hennessy, Js.

Argued May 28—officially released August 26, 2003

*Lawrence P. Weisman,* for the appellant (plaintiff).

*Hale C. Sargent,* for the appellees (defendants).

*Opinion*

BISHOP, J. The plaintiff, Irwin Donenfeld, appeals from the trial court's denial of his application to discharge a notice of lis pendens filed against certain of his real property by the defendants, Drew Friedman

and Nicholas Visconti. He argues on appeal that the court improperly denied the application because the purported contract for the sale of the property to the defendants was insufficient to maintain a finding of probable cause to sustain the notice of lis pendens. We affirm the judgment of the trial court.

The following facts are set forth in the court's memorandum of decision. On April 16, 2002, the plaintiff and the defendants entered into negotiations for the sale of property owned by the plaintiff at 609 Riverside Avenue in Westport (property). The result of those negotiations led to a handwritten document (initial agreement) that stated:

"Irwin Donenfeld of Coastwise Marina, 609 Riverside Ave., Westport, CT 06880, the seller, has accepted $500.00 as a binder from Drew Friedman, 39 Imperial Ave., Westport, CT 06880, the buyer, along with co-buyer Nick Visconti, 17 River Lane, Westport, CT 06880, toward an option to buy 609 Riverside Ave. within six months from the contract signing, at which time the balance of $24,500.00 will be paid for the option. The aforesaid option will entitle the buyers to purchase 609 Riverside Ave. for the balance of the purchase price equaling $1,225,000.00."

When the plaintiff and defendants signed the document, the defendants tendered the plaintiff a check for $500, which subsequently was cashed. Later, when the plaintiff tendered a contract to the defendants, it contained terms and conditions that the defendants considered to be inconsistent with their initial agreement, including a contingency for a purported right of first refusal in favor of the tenant in possession. As a consequence, the defendants returned the contract unsigned. At a later point, in an effort to reaffirm their desire to proceed with the sale, the defendants sent a check for

$24,500 to the plaintiff as the balance due pursuant to the parties' handwritten agreement.

The plaintiff subsequently returned the $24,500 check along with another check for $500 to the defendants, citing, as an impediment to the sale, a preexisting right of first refusal held by the tenant in possession, which, the plaintiff claimed, he had forgotten to mention in his dealings with the defendants. Since the return of the funds to the defendants, the plaintiff has contracted to sell the property to an alternate purchaser who was preferred by the tenant in possession.

On August 13, 2002, the defendants brought an action against the plaintiff, seeking, inter alia, specific performance. In their action, the defendants also sought a decree vesting title to the property in themselves and an injunction restraining the plaintiff from conveying, encumbering or disposing of the property. As part of their action, the defendants caused a notice of lis pendens affecting the property to be recorded on the land records.

In response, the plaintiff commenced this action, seeking, inter alia, a decree discharging that notice of lis pendens. The plaintiff claimed that the parties never came to a meeting of the minds, that the intent of their initial agreement was to enter into a formal and binding contract for the property's sale at some later date, and that such agreement was conditioned on that formal contract's execution. The defendants disputed the plaintiff's claims, arguing that the execution of a formal contract was not a condition precedent to the sale.. After a hearing, the court found that the defendants had established probable cause to sustain the minimum requirements of a binding contract for the sale of real property and, accordingly, denied the plaintiff's application for the discharge of the notice of lis pendens. This appeal followed.

We note at the outset that the sole purpose of a hearing on an application to discharge a notice of lis pendens is to determine whether there exists probable cause to sustain the lis pendens. In such a hearing, the ultimate merits of the case are not argued by counsel or decided by the court, but rather, such a hearing is conducted within the parameters of General Statutes § 52-325b.[1] See *Cadle Co.* v. *Gabel*, 69 Conn. App. 279, 285, 794 A.2d 1029 (2002).

The legal pathway guiding the court in making its determination is well established. "A notice of lis pendens is appropriate in any case where the outcome of the case will in some way, either directly or indirectly, affect the title to or an interest in real property. . . . As [General Statutes] § 52-325 (a) provides, the purpose of [notice of lis pendens] is to bind any subsequent purchaser or encumbrancer as if he were made a party to the action described in the lis pendens. [A] notice of lis pendens ensures that the [litigant's] claim cannot be defeated by a prejudgment transfer of the property.

---

[1] General Statutes § 52-325b provides: "(a) Upon the hearing held on the application or motion set forth in section 52-325a, the plaintiff shall first be required to establish that there is probable cause to sustain the validity of his claim and, if the action alleges an illegal, invalid or defective transfer of an interest in real property, that the initial illegal, invalid or defective transfer of an interest in real property occurred less than sixty years prior to the commencement of the action. Any property owner entitled to notice under subsection (c) of section 52-325 may appear and be heard on the issue.

"(b) Upon consideration of the facts before it, the court or judge may: (1) Deny the application or motion if (A) probable cause to sustain the validity of the claim is established or (B) in an action that alleges an illegal, invalid or defective transfer of an interest in real property, probable cause to sustain the validity of the claim is established and the initial illegal, invalid or defective transfer of an interest in real property occurred less than sixty years prior to the commencement of the action, or (2) order such notice of lis pendens discharged of record if (A) probable cause to sustain the validity of the plaintiff's claim is not established or (B) in an action that alleges an illegal, invalid or defective transfer of an interest in real property, the initial illegal, invalid or defective transfer of an interest in real property occurred sixty years or more prior to the commencement of the action."

. . . [T]he lis pendens procedure provides security for payment of the claim pending final resolution of the case. . . . The governing statutes contemplate that a property owner burdened by a notice of lis pendens may rightfully challenge its validity on two independent grounds: (1) the absence of probable cause to sustain the lis pendens claim; or (2) noncompliance with the procedural requirement of an effective lis pendens notice." (Internal quotation marks omitted.) Id., 286. In this case, the plaintiff claims that the initial agreement did not give rise to probable cause to sustain the lis pendens.

"Our rules regarding the standard of proof for establishing probable cause are well settled. It is important to remember that the plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. . . . Thus, we must determine whether the trial court's determination that probable cause exists to sustain the plaintiff's claim was clearly erroneous." (Internal quotation marks omitted.) Id., 286–87.

The court determined that the defendants had "established probable cause to sustain the minimum requirements of a binding contract for sale of real property . . . . Whether or not the [plaintiff] breached a contract for sale of the property as alleged by the [defendants] in their complaint is a matter to be determined at trial."

In asserting that the initial agreement did not meet the minimum requirements of a binding contract for the sale of real property, the plaintiff claims that the

document was only a preliminary memorandum that (1) contemplated the subsequent execution of a formal contract, (2) merely was a binder or option, (3) did not contain all the essential elements of a contract for the sale of real property and (4) was insufficient to entitle the defendants to specific performance. We need not address each of the plaintiff's claims, as our task on appeal requires us to examine only the initial agreement to determine whether it was clearly erroneous for the court to have found that the agreement established probable cause to sustain the minimum requirements of a binding contract for the sale of real property.

For a party to bring an action for specific performance, our statute of frauds requires that any agreement for the sale of real property be in writing and be signed by the party to be charged. See General Statutes § 52-550.[2] "The statute of frauds requires that the essential terms and not every term of a contract be set forth therein. . . . The essential provisions of a contract are the purchase price, the parties, and the subject matter for sale. . . . In order to be in compliance with the statute of frauds, therefore, an agreement must state the contract with such certainty that its essentials can be known from the memorandum itself, without the aid of parol proof . . . ." (Citations omitted; internal quotation marks omitted.) *Fruin* v. *Colonnade One at Old Greenwich Ltd. Partnership*, 38 Conn. App. 420, 426, 662 A.2d 129 (1995), aff'd, 237 Conn. 123, 676 A.2d 369 (1996).

The initial agreement in this case was in writing and signed by both the plaintiff and the defendants. In addition, the essential elements were included, i.e., the par-

---

[2] General Statutes § 52-550 (a) provides in relevant part: "No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property . . . ."

ties were identified by name and address, the purchase price and down payments were stated, and the subject matter of the sale was sufficiently identified as "609 Riverside Ave."[3] Because, for a finding of probable cause, the court need hold only a "bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it"; (internal quotation marks omitted) *Cadle Co.* v. *Gabel,* supra, 69 Conn. App. 287; we determine that it was not clearly erroneous for the court to find the agreement sufficient to establish probable cause to sustain the minimum requirements for a binding contract for the sale of real property.

The plaintiff buttresses his argument, in part, on the assertion that the initial agreement was not intended by the parties to be binding, as it contemplated that a future contract would be signed. In that argument, the plaintiff relies on *Fowler* v. *Weiss,* 15 Conn. App. 690, 546 A.2d 321, cert. denied, 209 Conn. 814, 550 A.2d 1082 (1988), for the proposition that if the parties' agreement had contemplated the execution of a formal written agreement, the initial agreement would not be binding. Because we believe that *Fowler* is dissimilar factually, we find that its holding is of no avail to the plaintiff.

In *Fowler,* the parties' agreement called for a future "superseding" contract to be signed on a specified date. Id., 693. In that case, this court found that it "was essential to the creation of a contract that a formal written agreement should be executed. This formal written

---

[3] An address alone has been held to be a sufficient description of the property that is the subject matter of the contract, even if the address does not include the name of the town as long as the contract was executed in the town in which the property is located. See *Gendelman* v. *Mongillo,* 96 Conn. 541, 547, 114 A. 914 (1921); *Kilday* v. *Schancupp,* 91 Conn. 29, 33, 98 A. 335 (1916). The parties executed the initial agreement in Westport, the town in which the subject property is located.

agreement was a condition precedent to the completion of a contract, and until such formal written agreement was executed the parties were still in the stage of negotiations for a contract and either party could withdraw from the negotiations." (Internal quotation marks omitted.) Id., 694.

Although the initial agreement in the present case mentioned the possibility of a future contract when it stated, "within six months from the contract signing," we do not believe that statement clearly indicates the parties' intention that the execution of a formal contract in the future was a condition precedent to completion of the sale. Ultimately, of course, that is a question for the fact finder to answer at the parties' trial on the issue of specific performance. At this juncture, however, we are unwilling to conclude that this language suffices to defeat a finding of probable cause.

The plaintiff also asserts that his performance of the purported agreement was impeded by the existence of a right of first refusal held by the tenant in possession. Whether such a right of refusal actually existed and, if so, to what effect, also are issues to be determined at the parties' trial and not at this preliminary stage of the proceedings. We note, in that regard, that the court, in its decision, did not make a specific finding that a right of first refusal existed. It is not our role to do so on appeal.

The judgment is affirmed.

In this opinion the other judges concurred.