DREW FRIEDMAN ET AL. *v.* IRWIN DONENFELD
(AC 25369)

Dranginis, Gruendel and Mihalakos, Js.

Argued May 23—officially released October 18, 2005

*Hale C. Sargent*, for the appellants (plaintiffs).

*John B. Farley*, with whom were *Ralph S. Loew* and, on the brief, *Lawrence P. Weisman*, for the appellee (defendant).

*Opinion*

MIHALAKOS, J. In this contract action seeking specific performance of the sale of real property, the plaintiffs, Drew Friedman and Nicholas Visconti, appeal from the judgment of the trial court in favor of the defendant, Irwin Donenfeld. On appeal, the plaintiffs claim that the court improperly (1) determined that the memorandum signed by the parties on April 16, 2002, was not an enforceable contract and (2) failed to conclude that the defendant breached the implied covenant of good faith and fair dealing. We affirm the judgment of the trial court.

The following facts, as found by the court in its memorandum of decision, are pertinent to our review. The plaintiffs are self-described entrepreneurs with considerable experience in real estate investment. The defendant is the owner of waterfront property in Westport that is the subject of this action. At the time this action arose, the defendant was leasing the property and the marina situated on it to Coastwise Services, Inc. (Coastwise). Paragraph twenty in the lease between the defendant and Coastwise provided Coastwise a right of first refusal in the event that the defendant was ever to sell the property.[1]

On April 16, 2002, the plaintiffs arrived at the defendant's property, unannounced, to inquire whether it was

---

[1] The relevant provision of the lease states: "20. SALE OF PROPERTY. In the event of the proposed sale of the building and property of which the leased premises form a part, Tenant, provided it is not in default, and this lease has not terminated, shall have right of first refusal to purchase the building and property upon the same terms as Landlord shall be prepared to accept. Tenant shall have ten (10) days to accept the same contract, and sixty (60) days thereafter to close. If a *bona fide* offer is not accepted by Tenant within said ten (10) day period, Landlord may proceed to sell the building and property to the third party. Any substantial change in the terms of the proffered contract shall start another ten day acceptance period running for reconsideration by Tenant." (Emphasis in original.)

on the market.[2] They met with the defendant, who stated that the property was for sale for $1.25 million. The parties entered into negotiations whereupon the plaintiffs expressed their desire to purchase the property. The plaintiffs proposed that the parties draft a memorandum to reflect their agreement from that day. The plaintiffs suggested that the memorandum take the form of an option contract, whereby they would pay $25,000 for a six month option to purchase the property. The defendant expressed his desire that the parties sign a more formal agreement prepared by his attorney. Friedman wrote the following arrangement on a stationery pad in the defendant's office: "Irwin Donenfeld of Coastwise Marina, 609 Riverside Ave., Westport, CT 06880, the seller, has accepted $500.00 as a binder from Drew Friedman, 39 Imperial Ave., Westport, CT 06880, the buyer, along with co-buyer Nick Visconti, 17 River Lane, Westport, CT 06880, toward an option to buy 609 Riverside Ave. within six months from the contract signing, at which time the balance of $24,500.00 will be paid for the option. The aforesaid option will entitle the buyers to purchase 609 Riverside Ave. for the balance of the purchase price equaling $1,225,000.00." When all parties had signed the memorandum, the plaintiffs tendered the defendant $500 and stated that they intended to exercise their option. Because of the events that followed the signing of the memorandum, its interpretation is central to the resolution of this case.

On April 17, 2002, the next day, the defendant contacted his attorney and asked him to draft a formal contract for sale of the property. On April 19, 2002, the

[2] Friedman was familiar with the property. Years prior to this action, Friedman had met with the defendant and had considered purchasing the property. Friedman testified that his initial interest in the property did not develop because the defendant's tenant had a right of first refusal on the land. He further testified that he decided to wait a few years until the lease had expired, at which point he would return to see if the property was still on the market.

defendant's attorney sent the plaintiffs a copy of the proposed contract. Paragraph sixteen of the contract noted the existence of the right of first refusal in Coastwise and provided that in the event that Coastwise exercised its right of first refusal, the defendant would have the right to terminate the sale to the plaintiffs and return all sums paid by them, extinguishing all claims and obligations between the parties.

When the plaintiffs received the proposed contract they were surprised to learn of the right of first refusal. The defendant testified that he had forgotten to mention it at their meeting on April 16, 2002. He also stated that he did not believe that the right of first refusal would be an impediment to the sale because Coastwise previously had never attempted to exercise it.

While the defendant attempted to get a waiver of the right of first refusal from Coastwise, it quickly became clear that the right would not be waived. Coastwise had sold its right of first refusal to another interested purchaser, Theodore O'Neill, who was ready to exercise the right when made available. By letter dated May 13, 2002, Friedman proposed alternative terms for the sale of the property, whereby the plaintiffs would agree to pay $1.55 million for the property if the defendant would agree to pay Friedman a commission of $300,000 for his services as "broker."[3] The defendant would not agree to that proposal. As a result, the plaintiffs refused to sign the contract with paragraph sixteen in place, and the defendant was not willing to remove the paragraph. On May 20, 2002, the plaintiffs sent a letter to the defendant and a check for $24,500, expressing their intention to proceed with the sale pursuant to the terms of the April

[3] Although it is not determinative of our decision in this case and although the trial court did not articulate a negative credibility finding on the basis of those facts, we are compelled to note that this court does not look with favor on the plaintiffs' attempt to circumvent the right of first refusal through fraudulent means.

16, 2002 memorandum. The defendant refused to accept the $24,500 and returned it, as well as the first $500, to the plaintiffs.

The plaintiffs brought an action against the defendant, seeking specific performance on the sale of the property pursuant to the April 16, 2002 memorandum. The plaintiffs also claimed that the defendant had breached the implied covenant of good faith and fair dealing inherent in the agreement. In an appeal from the trial court's denial of the defendant's motion to discharge the notice of lis pendens on the property, this court affirmed the trial court's determination that probable cause existed to sustain the minimum requirements of a binding contract for the sale of real property.[4] The case was tried on the merits, and the trial court held that the April 16, 2002 memorandum was a binder contemplating the signing of a formal contract, not a binding contract for sale. The court also held that the defendant did not repudiate the binder agreement. The plaintiffs filed a motion for articulation regarding its claim for breach of implied warranty of good faith and fair dealing, which the court denied.[5] This appeal followed.

I

This case presents the question of whether the terms of the April 16, 2002 memorandum obligated the defendant to sell the property to the plaintiffs. The court found that "the binder agreement signed by the parties on April 16, 2002, was not, in and of itself, a binding contract for the sale of the property." The plaintiffs argue that this finding was improper. We disagree.

The court determined that the agreement "was not, in and of itself, a binding contract for the sale of the

---

[4] See *Donenfeld* v. *Friedman*, 79 Conn. App. 64, 66, 829 A.2d 107 (2003).

[5] The plaintiffs did not seek review of the court's denial of their motion for articulation pursuant to Practice Book § 66-5. See part II.

property" after crediting the testimony of the defendant, which suggested that the essential elements of a contract were absent. "Under established principles of contract law, an agreement must be definite and certain as to its terms and requirements. . . . [W]here the memorandum appears [to be] no more than a statement of some of the essential features of a proposed contract and not a complete statement of all the essential terms, the plaintiff has failed to prove the existence of an agreement." (Citations omitted; internal quotation marks omitted.) *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 51, 873 A.2d 929 (2005). We agree with the court that the agreement between the parties was not a binding contract because the agreement contemplated the execution of a contract in the future.

Whether the parties contemplated the execution of a future contract as a condition precedent to the completion of a sale is a question of fact. *Donenfeld* v. *Friedman*, 79 Conn. App. 64, 71, 829 A.2d 107 (2003). "To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Atlantic Mortgage & Investment Corp.* v. *Stephenson*, 86 Conn. App. 126, 138–39, 860 A.2d 751 (2004).

"Whether the parties intended legally to bind themselves prior to the execution of a formal contract is to be determined from (1) the language used, (2) the circumstances surrounding the transaction, and (3) the purpose that they sought to accomplish. *Klein* v. *Chatfield*, 166 Conn. 76, 80, 347 A.2d 58 (1974)." *Fowler* v. *Weiss*, 15 Conn. App. 690, 693, 546 A.2d 321, cert. denied,

209 Conn. 814, 550 A.2d 1082 (1988). A consideration of these elements enables a court to determine if the informal contract, in this case the binder, is enforceable or simply an intention to negotiate a contract in the future. See id. If the execution of a future contract was an essential term of the parties' agreement, neither party would be bound to proceed with the sale in the absence of that contract.[6] Id., 694; see also *Atlantic Terra Cotta Co.* v. *Chesapeake Terra Cotta Co.*, 96 Conn. 88, 101, 113 A. 156 (1921).

The relevant language of the April 16, 2002 memorandum is: "Donenfeld . . . has accepted $500.00 *as a binder . . . toward an option to buy 609 Riverside Ave. within six months from the contract signing,* at which time the balance of $24,500.00 will be paid for the option." (Emphasis added.) Whether the parties intended that the memorandum alone create an enforceable contract depends on what the parties meant by the words "contract signing." The plaintiffs claim that the word "contract" refers to the April 16, 2002 memorandum and that the acceptance of the $500 bound the defendant to sell the property for six months from that date. The defendant, in contrast, argues that the word "contract" refers to the future contract he had insisted the parties sign. Under the defendant's interpretation, he was not bound to sell the property until the parties agreed to a more formal contract, a condition precedent that never occurred. The court determined that the defendant's interpretation was the correct one. There is ample evidence in the record to support its finding.

An examination of the purpose that the parties sought to accomplish through the April 16, 2002 memorandum

---

[6] The plaintiffs contend that the April 16, 2002 memorandum is enforceable because it contains all of the essential terms of a contract for the sale of real property under the statute of frauds. The question of enforceability, however, arises only if the court concludes that the memorandum created a binding obligation to sell. That is the issue that this case intends to resolve. See *Donenfeld* v. *Friedman,* supra, 79 Conn. App. 70–71.

supports the court's holding. The court specifically held that the defendant's testimony regarding the events that took place on April 16, 2002, was highly credible.[7] The defendant testified that he had told the plaintiffs that he wanted the parties to agree to a more formal contract prepared by his attorney. He expressed concern that certain characteristics of the property, such as environmental concerns and possible encumbrances on the land, would make the sale complicated. The defendant also presented evidence that he had negotiated to sell the property on numerous prior occasions and that each time he had followed the same practice of insisting on the signing of a formal contract drafted by his attorney. The court found that the contracts the defendant had used in the past were virtually identical to the one he offered to the plaintiffs.

The plaintiffs, initially seeking to purchase a six month option on the property for $25,000, modified their original proposal in response to the defendant's asserted condition that a formal contract be signed. The memorandum eventually drafted required the plaintiffs to pay $500 on April 16, 2002, rather than the $25,000 they had originally proposed. That response by the plaintiffs to the defendant's request supports the court's conclusion that the plaintiffs understood that their signing of a more formal contract was a condition precedent to the defendant's willingness to sell.[8]

The court's holding is further supported by the circumstances surrounding the parties' agreement. The

[7] The court stated in its memorandum of decision that it "was impressed with the candor and the credibility of the defendant in this matter and can find no reason to doubt the veracity of his testimony regarding the facts at issue in this case."

[8] The plaintiffs' testimony indicated that their understanding of the April 16, 2002 memorandum was that they would be able to negotiate with the defendant over any dissatisfactory terms in the formal contract or that they could reject the contract and avoid paying the remaining $24,500.

plaintiffs, who were experienced in real estate sales, drafted the agreement, whereas the defendant, who was inexperienced, expected that a contract of sale be prepared by his attorney. The parties' meeting was spontaneous in nature, yet the transaction being negotiated was for a considerable amount of money. Considering those circumstances, the court was correct in its finding that the April 16, 2002 memorandum was no more than an agreement to execute a future written contract. See *Westbrook* v. *Times-Star Co.*, 122 Conn. 473, 481, 191 A. 91 (1937); *Fowler* v. *Weiss*, supra, 15 Conn. App. 695.

The plaintiffs argue that the court's failure to characterize the April 16, 2002 memorandum as an option contract was in error and that when viewed as an option contract, the memorandum was enforceable. Whether an agreement is an option contract "is to be determined not by the name which the parties have given it, but by the nature of the obligations which it imposes." (Internal quotation marks omitted.) *Cutter Development Corp.* v. *Peluso*, 212 Conn. 107, 111, 561 A.2d 926 (1989). The court held that the defendant was not willing to commit to *any* binding sales agreement until the condition precedent of signing a formal contract was satisfied. Because the condition precedent failed to occur, the plaintiffs' argument regarding the nature of the parties' obligations is not persuasive.[9] For the

---

[9] Even if we were to assume that the plaintiffs did intend to purchase an option by the April 16, 2002 memorandum, their argument fails nonetheless because if such were the case, there would have been no meeting of the minds between the parties. "To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties." (Internal quotation marks omitted.) *Richter* v. *Danbury Hospital*, 60 Conn. App. 280, 288, 759 A.2d 106 (2000). "If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them . . . ." (Internal quotation marks omitted.) *Fortier* v. *Newington Group, Inc.*, 30 Conn. App. 505, 510, 620 A.2d 1321, cert. denied, 225 Conn. 922, 625 A.2d 823 (1993).

foregoing reasons, the court's finding that the April 16, 2002 memorandum did not constitute an enforceable contract was not clearly erroneous.

## II

The plaintiffs' second claim is that the court improperly failed to conclude that the defendant had violated the implied covenant of good faith and fair dealing inherent in the April 16, 2002 memorandum. Because the plaintiffs failed to seek review of the court's denial of their motion for articulation, their claim is not reviewable on appeal.

Regarding the plaintiffs' claim of breach of the implied warranty of good faith and fair dealing, the court held that "the plaintiffs have failed to sustain their burden of proving that the defendant repudiated the agreement in this case." The plaintiffs filed a motion for articulation pursuant to Practice Book § 66-5. The court denied the motion. Practice Book § 66-5 provides in relevant part that "[t]he sole remedy of any party desiring the court having appellate jurisdiction to review the trial court's decision on the motion [for articulation] filed pursuant to this section . . . shall be by motion for review under Section 66-7. . . ."[10] Because they failed to pursue the sole remedy available to them and the record is inadequate for review, we decline to review their claim. See *Haggerty* v. *Williams*, 84 Conn. App. 675, 683–84, 855 A.2d 264 (2004).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] Practice Book § 66-7 provides in relevant part: "Any party aggrieved by the action of the trial judge as regards rectification of the appeal or articulation under Section 66-5 may, within ten days of the issuance of notice of the order sought to be reviewed, make a written motion for review to the court, to be filed with the appellate clerk, and the court may, upon such a motion, direct any action it deems proper. . . ."