TD BANK, N.A. *v.* M.J. HOLDINGS, LLC, ET AL.
(AC 33777)

Alvord, Sheldon and West, Js.

Argued September 20, 2012—officially released June 18, 2013

*James R. Winkel*, for the appellants (named defendant et al.)

*Patrick M. Fryer*, for the appellee (plaintiff).

*Opinion*

WEST, J. The defendants, M.J. Holdings, LLC (M.J. Holdings), Mountain Top, LLC (Mountain Top), Debra Schlachter Hall, and Pierce Hall, appeal from the trial court's judgment of foreclosure by sale rendered in favor of the plaintiff, TD Bank, N.A.[1] On appeal, the defendants claim that the court improperly granted the plaintiff's motions (1) to strike their special defenses and (2) for summary judgment. We reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. M.J. Holdings executed a promissory note, dated April 5, 2004, in which it promised to pay the plaintiff the principal sum of $970,000. To secure the note, M.J. Holdings mortgaged to the plaintiff its interest in properties located at 125, 139, 141 and 143 Shaw Street in New London. Mountain Top executed a promissory note, dated April 27, 2005, in which it promised to pay the plaintiff the principal sum of $920,000. To secure the note, Mountain Top mortgaged to the plaintiff its interest in properties located at 106 and 156 Summit Street in Norwich. Debra Schlachter Hall and Pierce Hall each guaranteed the amounts due and payable under both notes by guaranty agreements, dated April 5, 2004, and April 27, 2005.

In March, 2010, the plaintiff commenced this action to foreclose the mortgages on the subject properties. In its revised complaint, dated June 11, 2010, the plaintiff

---

[1] The defendant PJL Realty, LLC, has not appealed.

alleged that M.J. Holdings and Mountain Top defaulted under the terms of their respective notes and mortgages, and that the plaintiff exercised its option to declare the entirety of the balances due but, despite due demand, the defendants failed to pay the balances due and owing. On August 4, 2010, the defendants filed an answer and four special defenses. On August 19, 2010, the plaintiff filed a motion to strike the defendants' special defenses, which was granted by the court on February 17, 2011.[2] On March 8, 2011, the plaintiff filed a motion for summary judgment as to liability only, which was granted by the court on July 1, 2011. Thereafter, the court rendered a judgment of foreclosure by sale. This appeal followed.

I

The defendants first claim that the court improperly granted the plaintiff's motion to strike their second, third and fourth special defenses. We agree in part.

The defendants alleged the following facts, which are germane to these defenses. M.J. Holdings agreed to sell its property located at 125 Shaw Street in New London "based upon the promise of the [p]laintiff that if the sale were allowed to proceed, and the [p]laintiff was provided with all of the net proceeds, it would modify certain of the [d]efendants' loans, including those made the basis of the current foreclosure. The [d]efendants were all beneficiaries of the promised loan modifications. . . . Specifically, the [p]laintiff agreed to modify the loans to interest only which would have reduced the [d]efendants' monthly debt and allowed them to remain current on all their loan obligations. . . . [M.J.

---

[2] The defendants also filed a two count counterclaim. The plaintiff filed a motion to strike the counterclaim, which the court granted. This court granted the plaintiff's motion to dismiss the portion of the appeal concerning the trial court's granting of the motion to strike the defendants' counterclaim for want of a final judgment.

Holdings] only agreed to the sale . . . based on the benefit it and the other [d]efendants were to receive in the form of the loan modifications. . . . The sale was conducted on July 17, 2009 and the full amount of the sale proceeds, $687,637.17, was forwarded to, and accepted by the [p]laintiff. . . . The [p]laintiff thereafter breached its agreement with [M.J. Holdings] and failed and refused to restructure or modify the loans."

"Our standard of review is undisputed. Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on [a motion to strike] is plenary. . . . A party wanting to contest the legal sufficiency of a special defense may do so by filing a motion to strike. The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . In ruling on a motion to strike, the court must accept as true the facts alleged in the special defenses and construe them in the manner most favorable to sustaining their legal sufficiency." (Citations omitted; internal quotation marks omitted.) *Barasso* v. *Rear Still Hill Road, LLC*, 64 Conn. App. 9, 12–13, 779 A.2d 198 (2001).

At the outset we note that "[b]ecause a mortgage foreclosure action is an equitable proceeding, the trial court may consider all relevant circumstances to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . Where the plaintiff's conduct is inequitable, a court may withhold foreclosure on equitable considerations and principles." (Citations omitted; internal quotation marks omitted.) *Southbridge Associates, LLC* v. *Garofalo*, 53 Conn. App. 11, 15, 728 A.2d 1114, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999).

We further note that "[e]quitable remedies are not bound by formula but are molded to the needs of justice. . . . Our Supreme Court has endorsed the principle that [a] court of equity does full and equal justice to all having an interest in the subject-matter by tersely expressing that [e]quity never does anything by halves. . . . The principle of [this] maxim embraces the well-established doctrine . . . that when equity once acquires jurisdiction it will retain it so as to afford complete relief. . . .

"Moreover, it is necessary to keep in mind . . . that equity looks to substance and not mere form. . . . In speaking about the meaning and effect of the equitable concept of substance rather than form, Pomeroy . . . opines that it is one of great practical importance, [which] pervades and affects to a greater or less degree the entire system of equity jurisprudence . . . . Equity always attempts to get at the substance of things, and to ascertain, uphold, and enforce rights and duties which spring from the *real* relations of parties. It will never suffer the mere appearance and external form to conceal the true purposes, objects, and consequences of a transaction." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Morgera* v. *Chiappardi*, 74 Conn. App. 442, 457–58, 813 A.2d 89 (2003), quoting 2 J. Pomeroy, Equity Jurisprudence (5th Ed. 1941) § 378, pp. 40–41.

"Historically, defenses to a foreclosure action have been limited to payment, discharge, release or satisfaction . . . or, if there had never been a valid lien. . . . A valid special defense at law to a foreclosure proceeding must be legally sufficient and address the making, validity or enforcement of the mortgage, the note or both. . . . [O]ur courts have permitted several equitable defenses to a foreclosure action. [I]f the mortgagor is prevented by accident, mistake or fraud, from fulfilling a condition of the mortgage, foreclosure cannot be had

. . . . Other equitable defenses that our Supreme Court has recognized in foreclosure actions include unconscionability . . . abandonment of security . . . and usury." (Internal quotation marks omitted.) *Fidelity Bank* v. *Krenisky*, 72 Conn. App. 700, 705–706, 807 A.2d 968, cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002).

Practically speaking, however, neither this court nor our Supreme Court has ever expressed a finite list of equitable defenses available in a foreclosure action. Typically, "[t]he assertion of equitable defenses to a mortgage foreclosure requires that the defenses [also] challenge the making, validity and enforcement of the loan note and mortgage. This principle was . . . considered to include events leading up to the execution of the loan documents, exclusive of issues involving administration of the loan, such as misapplication of payments." D. Caron & G. Milne, Connecticut Foreclosures (4th Ed. 2004) § 28.05A, p. 612. Nevertheless, given the equitable nature of a foreclosure action, events subsequent to the execution of the loan documents also have been considered. See, e.g., *Thompson* v. *Orcutt*, 257 Conn. 301, 311–14, 777 A.2d 670 (2001).

In *Thompson,* our Supreme Court considered actions by the plaintiff subsequent to the execution of the note and mortgage—in particular, fraudulent conduct in a bankruptcy proceeding—to be "directly and inseparably connected" to the foreclosure action to support the defendants' equitable defense of unclean hands. (Internal quotation marks omitted.) Id., 313. In doing so, our Supreme Court found that "[t]he original transaction creating the . . . mortgage was not tainted with fraud, but the plaintiff's ability to foreclose on the defendants' property . . . depended upon his fraudulent conduct in the bankruptcy proceeding. If the . . . mortgage had been administered as an asset of the bankruptcy estate, the plaintiff would have had no means of bringing this foreclosure action. . . . The

plaintiff perpetrated the fraud in the bankruptcy court in order to retain title to the . . . mortgage; he would have had no cause to foreclose on the . . . mortgage without the fraud." (Citations omitted.) Id., 313–14. Thus, although the actions constituting unclean hands occurred after the execution of the original loan documents, those actions directly impacted the enforceability of those loan documents. Id. With these principles in mind, we turn to the defendants' special defenses.

## A

In their second special defense, the defendants specifically alleged that "[t]he [c]ourt should use its equitable power to prevent the [p]laintiff from foreclosing as a result of its actions." The court indicated that the second special defense appeared to raise equitable estoppel as a defense to this foreclosure action and concluded that allegations of a promise to modify a loan are an insufficient basis for an equitable estoppel defense. In their fourth special defense, the defendants expressly raised equitable estoppel as a defense. The defendants argue that the court did not properly address their second special defense but incorrectly grouped it with their fourth special defense and improperly analyzed both as defenses of equitable estoppel. The defendants contend that their second special defense alleged the plaintiff's breach of the loan modification agreement. We agree.

"The interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary. . . . [T]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically." (Citation omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 536, 51 A.3d 367 (2012). The allegation that the plaintiff

breached the loan modification agreement is expressly set forth in the defendants' second special defense. This allegation, however, also is set forth and incorporated by reference into the defendants' fourth special defense. The only difference between the defendants' second and fourth special defenses is that their second special defense alleged that "[t]he [c]ourt should use its equitable power to prevent the [p]laintiff from foreclosing as a result of its actions" while their fourth special defense alleged that "the [p]laintiff should be [equitably] estopped from foreclosing on this [p]roperty." Although these allegations may bear a close resemblance to one another, we must construe the pleadings broadly and realistically and, therefore, we take into account the fact that the defendants expressly set forth these allegations into two separate defenses. We further take into account that their second special defense appears to refer to the trial court's broad equitable powers in foreclosure actions, while their fourth special defense refers to the specific defense of equitable estoppel. Thus, to the extent that the second special defense alleged that the plaintiff breached the loan modification agreement, we will consider this defense.

The defendants argue that modification has been found to be a valid defense to a foreclosure action. The plaintiff counters that the alleged loan modification agreement is inconsistent with the allegations set forth in the plaintiff's revised complaint and, furthermore, cannot be said to attack the making, validity or enforcement of the note and/or mortgage. We agree with the defendants.

It appears that neither this court nor our Supreme Court has addressed whether breach of a loan modification agreement constitutes a valid defense to a foreclosure action. A number of decisions of the Superior Court, however, have asserted that "[a]llegations of modification directly attack the validity or enforcement

of the original note or [mortgage such that] a special defense alleging modification is properly raised in a foreclosure proceeding." (Internal quotation marks omitted.) *ALI, Inc.* v. *Veronneau*, Superior Court, judicial district of Waterbury, Docket No. CV 126431 (October 11, 1996) (17 Conn. L. Rptr. 677); see also *BAC Home Loans Servicing, L.P.* v. *Presutti*, Superior Court, judicial district of Hartford, Docket No. CV-09-5029746 (April 8, 2010) (49 Conn. L. Rptr. 609). Although we find this rationale persuasive, we recognize that in order to raise this defense, the defendants must allege a valid loan modification agreement that attacks the making, validity or enforcement of the original note and/or mortgage.

"A promissory note is nothing more than a written contract for the payment of money, and, as such, contract law applies." (Internal quotation marks omitted.) *Fidelity Bank* v. *Krenisky*, supra, 72 Conn. App. 707. "The rules governing contract formation are well settled. . . . [A]n offer imposes no obligation upon either party, until it is accepted by the offeree, according to the terms in which the offer was made. . . . Our holdings adhere to the basic principle of contract law that an offeror is the master of his offer, and therefore, is not obligated to make an offer on any terms except his own. . . . Thus, [a]n offer can be accepted by the rendering of a performance only if the offer invites such an acceptance. . . . Further, [i]n order to accept the offer [by rendering performance], the offeree must give . . . that for which the offeror bargains. If it is in any material respect different, there is no contract." (Citations omitted; internal quotation marks omitted.) *Auto Glass Express, Inc.* v. *Hanover Ins. Co.*, 293 Conn. 218, 227, 975 A.2d 1266 (2009). Such a contract where "the offeror invites acceptance of his promise . . . by performance" is a unilateral contract. (Internal quotation marks omitted.) Id., 224 n.8.

Furthermore, "[u]nder established principles of contract law, an agreement must be definite and certain as to its terms and requirements. . . . [W]here the memorandum appears [to be] no more than a statement of some of the essential features of a proposed contract and not a complete statement of all the essential terms, [a party] has failed to prove the existence of an agreement." (Internal quotation marks omitted.) *Friedman* v. *Donenfeld*, 92 Conn. App. 33, 39, 882 A.2d 1286 (concluding that "agreement between the parties was not a binding contract because the agreement contemplated the execution of a contract in the future"), cert. denied, 276 Conn. 930, 889 A.2d 817 (2005). Likewise, "[f]or a valid modification to exist, there must be mutual assent to the meaning and conditions of the modification and the parties must assent to the same thing in the same sense. . . . Modification of a contract may be inferred from the attendant circumstances and conduct of the parties. . . . A modification of an agreement must be supported by valid consideration and requires a party to do, or promise to do, something further than, or different from, that which he is already bound to do." (Citation omitted; internal quotation marks omitted.) *Harley* v. *Indian Spring Land Co.*, 123 Conn. App. 800, 821–22, 3 A.3d 992 (2010).

In *Forte* v. *Citicorp Mortgage, Inc.*, 66 Conn. App. 475, 479, 784 A.2d 1024 (2001), this court considered the appeal from a judgment rendered in an action separate from the foreclosure proceedings brought by the plaintiff mortgagors against the defendant mortgagee in which the plaintiffs alleged, inter alia, that the defendant breached the implied covenant of good faith and fair dealing by refusing to allow them to refinance. In *Forte*, the complaint alleged "that representatives of [the defendant] had informed them that they could 'automatically' refinance within the first year of the mortgage

loan without incurring additional appraisal or inspection costs . . . [but] that when they made a request to refinance, after interest rates dropped, [the defendant] informed them that they would not qualify for refinancing unless they reduced the principal amount of their debt." Id., 478. More specifically, the court stated that "paragraph thirteen of count one of the plaintiffs' revised complaint states: 'The plaintiffs were told that because their request was made within one year, no additional [appraisal] inspection or similar closing costs would be incurred, and that either a new Mortgage or Modification Agreement would be provided.' In construing the allegations of the pleading liberally, as we must, we conclude that the plaintiffs have alleged the existence of an agreement to refinance the property." Id., 485.[3]

In the present case, the defendants alleged that M.J. Holdings agreed to sell its property located at 125 Shaw Street in New London "based upon the promise of the [p]laintiff that if the sale were allowed to proceed, and the [p]laintiff was provided with all of the net proceeds, it would modify certain of the [d]efendants' loans, including those made the basis of the current foreclosure. . . . Specifically, the [p]laintiff agreed to modify the loans to interest only which would have reduced the [d]efendants' monthly debt and allowed it to remain current on all its loan obligations. . . . The sale was conducted . . . and the full amount of the sale proceeds . . . was forwarded to, and accepted by the [p]laintiff."

---

[3] In *Forte*, this court further considered the trial court's granting of the defendant's motion for summary judgment and concluded "that the plaintiffs have offered evidence that raises a genuine issue of material fact as to whether there was a refinancing agreement between the parties, in which all of the terms of the refinanced mortgage would remain the same except for the then lower current interest rate and, therefore, that summary judgment as to that issue was improper." *Forte* v. *Citicorp Mortgage, Inc.*, supra, 66 Conn. App. 486.

The allegations in the present case concerning the existence of a loan modification agreement are very similar to the allegations set forth in *Forte* concerning the existence of a refinancing agreement. In construing the allegations of the pleading liberally, as we must, we conclude that the defendants have alleged the existence of a loan modification agreement that, furthermore, attacks the validity or enforcement of the note and mortgage between the plaintiff and M.J. Holdings.[4] At the outset, we note that the allegations set forth in the defendants' second special defense are not inconsistent with the allegations set forth in the plaintiff's revised complaint because allegations of a loan modification agreement merely provide additional facts that the notes and mortgages set forth in the plaintiff's revised complaint were subsequently modified. The defendants' allegations set forth a promise on behalf of the plaintiff that induced performance on behalf of M.J. Holdings so as to constitute a unilateral contract. The defendants further alleged that the plaintiff agreed to modify the loans to interest only, which is sufficient to allege mutual assent to the meaning and conditions of the modification. We recognize that the allegations may appear to constitute a mere promise to modify the loans and come to terms with the conditions of the loan modification at some future point, but we also recognize that we "must accept as true the facts alleged in the special defenses and *construe them in the manner most favorable to sustaining their legal sufficiency.*" (Emphasis added; internal quotation marks omitted.) *Barasso* v. *Rear Still Hill Road, LLC*, supra, 64 Conn.

---

[4] We note that the defendants also alleged that they were *all* beneficiaries of the promised loan modifications. To the extent that some of the defendants appear to allege a status as third party beneficiaries to the alleged loan modification agreement, we need not consider the sufficiency of these allegations to support a special defense at this time because we have already indicated that facts provable would support the defense of loan modification as it relates to at least one defendant, M.J. Holdings.

App. 13. Furthermore, we conclude that, so construed, these allegations attack the validity or enforcement of the note and mortgage, which impacts the plaintiff's ability to foreclose thereon, because the defendants alleged that the loan modification agreement would have allowed them to remain current on all their loan obligations.[5] Thus, we conclude that the court improperly struck the defendants' second special defense.

### B

The allegations set forth in the defendants' second special defense, which allege the existence of a loan modification agreement, are substantially incorporated by reference into the defendants' third special defense. In their third special defense, the defendants specifically alleged that "[t]he actions of the [p]laintiff . . . constitute a breach of the implied covenant of good faith and fair dealings made a part of all contracts in Connecticut." The court concluded that the plaintiff's alleged breach of a promise to modify the terms of the mortgage did not rise to the level of breach of that duty. The defendants argue that breach of the implied covenant of good faith and fair dealing is a valid defense to a foreclosure action. The defendants further contend that the facts as alleged in their third special defense are inapposite to cases in which courts have determined that the refusal to negotiate a loan modification did not constitute a breach of the implied covenant of good faith and fair dealing because the defendants in the present case alleged that they actually came to an

---

[5] We note that the defendants further alleged that the plaintiff breached the loan modification agreement. We recognize, however, that this allegation is surplusage because the allegation of a loan modification agreement constitutes a valid special defense to a foreclosure action regardless of the parties' subsequent actions with respect to that agreement. The establishment at trial of the existence of a valid loan modification agreement would end the inquiry with respect to the enforceability of the original loan documents such that consideration of breach of the loan modification agreement would be unnecessary.

agreement with the plaintiff regarding a loan modification, but that the plaintiff failed to abide thereby. The plaintiff counters that breach of the implied covenant of good faith and fair dealing is not a valid defense to a foreclosure action or, in the alternative, that the facts as alleged do not set forth a breach of that duty. For reasons previously set forth; see footnote 4 of this opinion; we need not address the parties' arguments and conclude that the court did not improperly strike the defendants' third special defense.

The allegation of breach of the implied covenant of good faith and fair dealing with respect to a loan modification agreement is surplusage because the allegation of a loan modification agreement constitutes a valid special defense to a foreclosure action regardless of the plaintiff's subsequent actions with respect to that agreement. See footnote 4 of this opinion. The defendants have already alleged in their second special defense the existence of a loan modification agreement that attacks the validity or enforcement of the note and mortgage between the plaintiff and M.J. Holdings. See Part I A of this opinion. The establishment at trial of the existence of a valid loan modification agreement would end the inquiry with respect to the enforceability of the original loan documents such that consideration of breach of the implied covenant of good faith and fair dealing with respect to that agreement would be unnecessary. On the other hand, if there is no such agreement, there can be no implied duty of good faith and fair dealing with respect thereto. See *Forte* v. *Citicorp Mortgage, Inc.*, supra, 66 Conn. App. 484 ("[t]he existence of a contract between the parties is . . . a necessary predicate to a successful claim of breach of an implied covenant of good faith and fair dealing, and the failure to allege the existence of an agreement is fatal to such a claim"). Thus, to the extent that the allegations set forth in the defendants' third special

defense are surplusage to the allegations set forth in the defendants' second special defense, the court did not improperly strike the defendants' third special defense.

## C

The allegations set forth in the defendants' second special defense, which pleaded the existence of a loan modification agreement, are substantially incorporated by reference into the defendants' fourth special defense. In their fourth special defense, the defendants specifically alleged that "the [p]laintiff should be [equitably] estopped from foreclosing on this [p]roperty." The court concluded that allegations of a promise to modify a loan are an insufficient basis for an equitable estoppel defense. The defendants argue that their allegations satisfy the two essential elements of equitable estoppel in that they allege that the plaintiff agreed to modify the subject loan in exchange for the net proceeds from the sale and that, in reliance thereon, the defendants paid the plaintiff the net proceeds from the sale. The defendants then note that the province of equitable estoppel is to show what equity and good conscience require irrespective of the legal rights of the parties. The plaintiff counters that the court properly balanced the equities and determined that the actions of the parties to this commercial transaction constituted a promise to act at a future time, which is an insufficient basis for an equitable estoppel defense. We agree with the plaintiff.

"[T]raditional mortgage foreclosure standards . . . permit the assertion of certain special defenses, including that of equitable estoppel." *Congress Street Condominium Assn., Inc.* v. *Anderson*, 132 Conn. App. 536, 544, 33 A.3d 274 (2011).[6] "The doctrine of equitable

---

[6] In *Congress Street Condominium Association, Inc.*, this court did not reach the question of whether the pleading proffered by the defendant adequately set forth a claim of equitable estoppel, "only that such a defense, if properly pleaded, may be raised in defense of an action by a condominium

estoppel is well established. [W]here one, by his words or actions, intentionally causes another to believe in the existence of a certain state of things, and thereby induces him to act on that belief, so as injuriously to affect his previous position, he is [precluded] from averring a different state of things as existing at the time. . . . Our Supreme Court . . . stated, in the context of an equitable estoppel claim, that [t]here are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. . . . Broadly speaking, the essential elements of an equitable estoppel . . . as related to the party to be estopped, are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts." (Citations omitted; internal quotation marks omitted.) *Johnnycake Mountain Associates* v. *Ochs*, 104 Conn. App. 194, 208–209, 932 A.2d 472 (2007), cert. denied, 286 Conn. 906, 944 A.2d 978 (2008).

Allegations of the existence of a loan modification agreement, which have been incorporated by reference from the defendants' second special defense, do not support the special defense of equitable estoppel. On the one hand, the existence of a loan modification

association to foreclose liens based on imposition of fines." *Congress Street Condominium Assn., Inc.* v. *Anderson,* supra, 132 Conn. App. 544 n.10.

agreement is a valid defense in a foreclosure action regardless of the defendants' classification thereof as equitable estoppel. On the other hand, we recognize that our Supreme Court has underscored the fundamental difference between equitable estoppel and promissory estoppel by relying upon the second edition of American Jurisprudence. See *Union Carbide Corp.* v. *Danbury*, 257 Conn. 865, 874 n.2, 778 A.2d 204 (2001), citing 28 Am. Jur. 2d 465, Estoppel and Waiver § 35 (2d Ed. 2000). The second edition of American Jurisprudence provides in particular that "[p]romissory estoppel involves a clear and definite promise while equitable estoppel involves only representations and inducements. Promissory estoppel is applicable to promises while equitable estoppel is applicable to misstatements of fact. The representations at issue in promissory estoppel go to future intent *while equitable estoppel involves statements of past or present fact.* . . . Whereas promissory estoppel is used offensively, to create a cause of action, equitable estoppel functions defensively to bar a party from . . . instituting an action that it is entitled to institute." (Emphasis added.) 28 Am. Jur. 2d, supra, § 34, pp. 499–501.

The promise to modify the loans to interest only that allegedly induced M.J. Holdings to sell its property located at 125 Shaw Street is not a proper basis for an equitable estoppel defense. To the extent that the defendants' fourth special defense alleges the existence of a valid loan modification agreement, this defense is redundant to that set forth in the defendants' second special defense. Thus, we conclude that the court did not improperly strike the defendants' fourth special defense.

## II

The defendants next claim that the court improperly granted the plaintiff's motion for summary judgment.

The court's decision to grant the plaintiff's motion for summary judgment as to liability must be reversed because the court did not consider the defendants' second special defense, which previously had been improperly stricken. The granting of the motion for summary judgment was therefore improper. See *Homecomings Financial Network, Inc.* v. *Starbala,* 85 Conn. App. 284, 290, 857 A.2d 366 (2004). Accordingly, the court improperly rendered judgment of foreclosure by sale without considering that defense.

The judgment of foreclosure by sale is reversed and the case is remanded with direction to deny the plaintiff's motion to strike the defendants' second special defense and the plaintiff's motion for summary judgment, and for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

