******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NOROTON PROPERTIES, LLC *v.* SHERIF M.
LAWENDY
(AC 35827)

Alvord, Mullins and West, Js.

*Argued September 24—officially released December 23, 2014*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Hon. Kevin Tierney, judge trial
referee.)

*Edward Kanowitz*, for the appellant (plaintiff).

*Brenden P. Leydon*, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, Noroton Properties, LLC, appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the defendant, Sherif M. Lawendy, in this action to foreclose a commercial mortgage. The court concluded that the plaintiff failed to prove that the defendant was in default of the mortgage note and, accordingly, declined to award the plaintiff an appraisal fee, a title search fee, late fees, default interest, or attorney's fees. On appeal, the plaintiff claims that the court improperly (1) found that the parties mutually agreed to extend the maturity date of the mortgage note, (2) determined that the mortgage note provided a ten day grace period for the payment of the final balloon payment, (3) concluded that the defendant satisfied his obligations by being "ready, willing and able" to make the final payment in April, 2011, rather than by making a "bona fide offer and tender" of payment as required by General Statutes § 49-13, (4) found that the plaintiff would not have accepted payment from the defendant in April, 2011, and (5) determined that the plaintiff was not entitled to attorney's fees because the remaining amount due under the mortgage note was not collected in "court proceedings." We agree with the plaintiff's first claim and, accordingly, reverse the judgment of the trial court.[1]

The court's memoranda of decision[2] and the record reveal the following facts and procedural history. On March 20, 2009, the defendant executed a mortgage in favor of "The 1031 Exchange Experts, LLC, Qualified Intermediary (or QI) for Noroton Properties, LLC, Exchanger," on commercial property he owned in Norwalk, to secure his payment of a mortgage note in the amount of $75,000. The note and mortgage were assigned to the plaintiff, and the assignment was duly recorded in the Norwalk land records.

The terms of the mortgage note provided that the defendant was to make monthly installments of principal and interest in the amount of $537.32, commencing on April 20, 2009, and continuing on the twentieth day of each succeeding calendar month. The defendant was required to make one final balloon payment of $71,409.22, which would be the outstanding principal amount due under the note, plus all accrued interest, on the "Maturity Date" of March 20, 2011. The note also contained the following provision: "This Note may not be changed orally, but only by an agreement in writing, signed by the Lender and the Maker."

The defendant made all twenty-three monthly installment payments on time. Notwithstanding the terms of the note, however, the defendant sent the plaintiff an additional monthly installment payment in the amount of $537.32 by check dated March 15, 2011. The plaintiff, by e-mail dated March 17, 2011, acknowledged the

defendant's "usual monthly mortgage payment," but reminded the defendant that the note was due and payable on March 20, 2011, and asked whether he wanted the plaintiff to deposit the check or to return it to him "at payoff." The defendant responded by e-mail that he was "unprepared to close the note on 3/20/11" and asked for a thirty day extension of time to make the final balloon payment. On March 19, 2011, the plaintiff e-mailed the defendant and stated that it would grant the requested extension upon payment of a $5000 fee. The defendant did not pay the fee or make the final balloon payment on March 20, 2011. The plaintiff commenced the present foreclosure action on September 7, 2011.

Following a three day trial on the issue of liability, the court issued its memorandum of decision on January 9, 2013. The court concluded that the defendant was not in default for his failure to make the $71,409.22 balloon payment on March 20, 2011. In reaching that conclusion, the court made the following determinations: "The court finds that the parties mutually agreed to extend the March 20, 2011 maturity date to April 20, 2011 by the tender and acceptance of the March 15, 2011 $537.32 check. The court finds that the Mortgage Note had a ten day grace period. That ten day grace period gave the defendant the right to tender full payment of the principal and six (6.0%) percent interest to April 30, 2011. The defendant was ready, willing and able to tender that full payment of principal and interest on April 29, 2011. The court further finds that the plaintiff would not have accepted that payment of $70,871.80 principal plus six (6.0%) percent interest therein from March 20, 2011 to April 29, 2011, due to the plaintiff's insistence on the ten (10.0%) percent late charge, twelve (12.0%) [percent] default interest and attorney fees."

For those reasons, the court concluded that the plaintiff had failed to prove that the defendant was in default of the mortgage note. In the court's January 9, 2013 decision, it found that the principal and interest due under the note as of January 9, 2013 was $78,608.06, with per diem interest of $11.81. By treasurer's check dated January 18, 2013, the defendant paid the plaintiff the sum of $78,714.35.

Subsequently, the court held an additional two day evidentiary hearing to consider the remaining issues raised by the parties. The hearing concluded on March 14, 2013. No posthearing briefs were filed. By memorandum of decision issued June 17, 2013, the court confirmed its finding that the plaintiff had failed to prove that the defendant was in default of the mortgage note. For that reason, the court concluded that the plaintiff was not entitled to late fees, default interest, an appraisal fee, a title search fee, or attorney's fees under the provisions of either the note or mortgage. The court rendered judgment in favor of the defendant. This

appeal followed.

We now consider the dispositive issue on appeal, which is whether the court improperly determined that the parties had mutually agreed to extend the maturity date by the tender and acceptance of the defendant's March 15, 2011 check for $537.32. The March 15, 2011 check, having been sent by the defendant to the plaintiff and having been retained by the plaintiff, was the sole basis provided by the court for its finding of a mutual agreement to extend the maturity date of the mortgage note. No case law or other legal authority was cited by the court to support this determination.

"A promissory note is nothing more than a written contract for the payment of money, and, as such, contract law applies. . . . The rules governing contract formation are well settled. . . . [A]n offer imposes no obligation upon either party, until it is accepted by the offeree, according to the terms in which the offer was made." (Citation omitted; internal quotation marks omitted.) *TD Bank, N.A.* v. *M.J. Holdings, LLC*, 143 Conn. App. 322, 331, 71 A.3d 541 (2013). "Likewise, [f]or a valid modification to exist, there must be mutual assent to the meaning and conditions of the modification and the parties must assent to the same thing in the same sense. . . . Modification of a contract may be inferred from the attendant circumstances and conduct of the parties. . . . A modification of an agreement must be supported by valid consideration and requires a party to do, or promise to do, something further than, or different from, that which he is already bound to do." (Internal quotation marks omitted.) Id., 332.

"Whether the parties to a contract intended to modify the contract is a question of fact. . . . The resolution of conflicting factual claims falls within the province of the trial court. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witness. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Torgerson* v. *Kenny*, 97 Conn. App. 609, 616, 905 A.2d 715 (2006), cert. denied, 281 Conn. 913, 916 A.2d 54 (2007).

The following additional facts are necessary for our resolution of the plaintiff's claim. When the plaintiff received the defendant's March 15, 2011 check in the amount of $537.32, the plaintiff made the following inquiries of the defendant by an e-mail sent on March 17, 2011: "We are in receipt of your usual monthly mortgage payment. Thank you.

"The note is due and payable in full, $71,409.22 on March 20, 2011. What are your plans for payment? Will you have [your attorney] prepare release documents for me to execute?

"Do you prefer that I deposit the check or return it to you at payoff?"

In response to the plaintiff's inquiries, the defendant e-mailed the following message on March 19, 2011: "I just got back into town and saw your e-mail. I have been working with a bank to convert the remainder of the note into a term loan. I thought I had a while longer to get this done, as my first payment was made April, 2009. *The documents do, however, say March 20, 2011. I apologize for being unprepared to close the note on 3/20/2011. This was an oversight on my part. If you would be so kind to give me a 30 day extension in order to arrange my finances, I will be able to close the note no later than May 1, 2011.* My banker is back from vacation this Tuesday, and I have a phone call in to him to expedite the process. In the meantime, please deposit the most recent check. *If you are amenable to this, I will send another check for the month of April and close the note no later than May 1, 2011.* My attorney will be happy to draft any paperwork you may need regarding this matter." (Emphasis added.)

Within one hour, the plaintiff responded: "We cannot accept your request to extend the loan. We are obligated to repay our lender . . . with these monies. I cannot allow your poor planning to damage my credit. . . . Please arrange for payment on Monday." Approximately twenty minutes later, the defendant replied: "I cannot close on Mon[day]." The plaintiff's responding e-mail, sent fifteen minutes later, stated: "We will start foreclosure proceedings Monday." The plaintiff's final e-mail to the defendant that day, sent at approximately 3:30 p.m., extended the following offer: "If you wish the forty day extension that you have requested we will require an immediate fee of $5,000 to offset [the] additional costs and processes to try to rearrange the financing on our end." The defendant did not make the final balloon payment on March 20, 2011, nor did he pay the plaintiff $5000 for an extension of time to make the final payment.

At trial, the defendant testified that the plaintiff never returned his March 15, 2011 check in the amount of $537.32, nor did the plaintiff deposit that check into an account. The defendant also testified that he wrote that check because "it was an amount I thought that I still owed." He later clarified that testimony: "I thought I was making an additional installment payment. I had no idea that the—I didn't realize that the term of the loan was that month, my first payment was in April, 2009. I thought I had until April, 2011. It was an error on my part."

When questioned about the maturity date set forth in the mortgage note, the defendant testified that he reviewed the note and realized that the final payment was due on March 20, 2011, after he received the plaintiff's e-mail. He agreed that the balance due on March 20, 2011, was $71,409.22 and that he did not make that payment because he did not have available funds at the time. The defendant further acknowledged that the plaintiff offered to extend the time for payment only if the defendant paid a $5000 fee. The defendant testified: "I believe [the extension] was granted based on the caveat that if I were to pay [the plaintiff's owner] $5000, he would grant me the forty-five day extension." When asked if he agreed to pay the $5000 fee, the defendant testified: "No, I didn't agree to pay that because [the plaintiff's owner] couldn't substantiate what that $5000 was for." When asked whether he thought he had an additional thirty days to pay the remaining amount due under the note, the defendant responded: "*I didn't think I had an additional amount of time* because there were no more additional responses by [the plaintiff's owner], or demands after that period of time. He never responded back saying, I don't grant the thirty days, or, here's the payoff statement." (Emphasis added.)

On appeal, the plaintiff claims that the court improperly found that the parties mutually agreed to extend the maturity date of the mortgage note. The plaintiff argues that the basis for the court's determination was "inadequate to support the finding of any such agreement when faced with the terms of the note[3] and the statute of frauds." The plaintiff further argues that "[t]he finding of an agreement is clearly erroneous, and it is not supported by the evidence." The defendant counters that the court's factual determination that the maturity date of the mortgage note had been modified by the parties was supported by the plaintiff's acceptance of the March 15, 2011 payment. Citing *Borst* v. *Ruff*, 137 Conn. 359, 362, 77 A.2d 343 (1950), he argues that the plaintiff's retention of that check extended the maturity date because "[a] long, unexplained retention of a check tends to show its acceptance for the purpose for which it was given." The defendant also claims that we should not consider the plaintiff's argument regarding the statute of frauds because there is nothing in the record that indicates the plaintiff raised that issue before the trial court.

We agree with the defendant that the record before this court is inadequate to consider the plaintiff's statute of frauds claim. The partial trial transcripts provided by the plaintiff for this appeal include only the testimony of the witnesses. Counsel's arguments before the trial court are not part of the record. Further, the court's memoranda of decision do not mention the statute of frauds. Additionally, no posthearing briefs were filed by the parties. In the absence of a more complete

record, we are unable to determine whether the issue was properly preserved and decline to review this claim.[4]

With respect to the terms of the mortgage note, the plaintiff is correct that the express terms of the contract preclude an oral modification of the maturity date. Nonetheless, as argued by the defendant, it is well settled that the conduct of the parties may establish a modification under certain circumstances. "Because the conduct of the parties was sufficient to establish a modification of the contract extending its performance date, the fact that there was no explicit agreement to extend the time for performance is of no import. . . . [W]e reject the [plaintiff's] claim that there could be no modification because the contract specifically provided for modifications to be in writing. . . . [D]espite the presence of such a clause in a contract, a modification by subsequent parol agreement will be given effect. . . . We see no reason why this principle should not also apply to a modification implied in fact from the conduct of the parties." (Citation omitted.) *McKenna* v. *Woods*, 21 Conn. App. 528, 533, 574 A.2d 836 (1990).

Nevertheless, on the basis of our review of the record, we conclude that the evidence does not support the court's finding that the parties mutually agreed to the extension of the maturity date of the mortgage note. Although the court correctly found that the defendant tendered the March 15, 2011 check in the amount of $537.32 and that the plaintiff neither returned it to the defendant nor deposited it into an account, that fact alone does not automatically extend the maturity date. There is no case law to support such a conclusion under the circumstances of this case.

The defendant admittedly sent the March 15, 2011 installment payment in error. He thought the final balloon payment was due the following month. Accordingly, the check was not sent with a request to extend the maturity date. The question of an extension of that date arose only after the plaintiff reminded the defendant that the final balloon payment was due on March 20, 2011, and the defendant indicated that he did not have available funds to make the payment on the stated maturity date. Consequently, the court could not have reasonably found from the evidence that the installment payment represented a request for an extension, which the plaintiff assented to by failing to return the check.[5]

Further, the e-mail correspondence clearly shows that the plaintiff did not agree to an extension when it acknowledged receipt of the March 15, 2011 check. After thanking the defendant for the check, the plaintiff reminded him that the final balloon payment was due on March 20, 2011, and inquired whether the defendant wanted the check deposited or returned to the defendant "at payoff." These e-mails do not demonstrate "mutual assent to the meaning and conditions of the

modification" or that the parties assented "to the same thing in the same sense." (Internal quotation marks omitted.) *TD Bank, N.A.* v. *M.J. Holdings, LLC*, supra, 143 Conn. App. 332. Furthermore, the defendant testified at trial that he did not believe that the plaintiff had granted his request for additional time because the plaintiff demanded $5000 for a forty day extension and the defendant would not pay it. Accordingly, we conclude that the evidence adduced at trial did not support the factual finding of the court that the parties mutually agreed to extend the maturity date of the mortgage note. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Torgerson* v. *Kenny*, supra, 97 Conn. App. 616.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

[1] Because the resolution of that issue is dispositive of the appeal, we do not reach the plaintiff's remaining claims.

[2] The court bifurcated the proceedings into two phases, the first phase addressing the issue of liability and the second phase resolving the plaintiff's claim for attorney's fees and any remaining claims. The court issued a separate memorandum of decision after each of the two phases.

[3] As previously discussed, the mortgage note expressly provides: "This Note may not be changed orally, but only by an agreement in writing, signed by the Lender and the Maker." The defendant does not claim that the parties executed a written modification agreement.

[4] "[A]s a general matter, the [appellant] is not entitled to appellate review of claims that were not raised in the trial court or on which there is an inadequate record." *Flater* v. *Grace*, 291 Conn. 410, 420, 969 A.2d 157 (2009).

[5] For this reason, the case cited by the defendant, *Borst* v. *Ruff*, supra, 137 Conn. 362, is inapposite. In the present case, the check was not given for the purpose of receiving an extension of the maturity date. The check was sent in the mistaken belief that the next monthly installment was due. Accordingly, its retention by the plaintiff did not represent a mutual agreement with the defendant to modify the maturity date, particularly in light of the continuing correspondence between the parties.