******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

PRESCOTT, J., dissenting. In my view, in striking the counterclaims and special defenses filed by the defendants Robin Blowers and Mitchell Piper,[1] the trial court failed to construe the pleadings in a light most favorable to upholding their legal sufficiency and too narrowly construed and applied the making, validity, or enforcement of the note test. Moreover, I believe that the present case is distinguishable from, and thus not controlled by, this court's decision in *U.S. Bank National Assn.* v. *Sorrentino*, 158 Conn. App. 84, 118 A.3d 607, cert. denied, 319 Conn. 951, 125 A.3d 530 (2015). Unlike the majority, I would conclude that the court improperly granted the motion to strike filed by the plaintiff, U.S. Bank National Association, as Trustee for the Holders of the First Franklin Mortgage Loan Trust Mortgage Pass Through Certificates, Series 2005-FF10, and would vacate the judgment of foreclosure and remand the case for further proceedings.[2] Accordingly, I respectfully dissent.[3]

I begin by setting forth the relevant facts, accepting as admitted those facts alleged in the special defenses and counterclaims, and procedural history. The defendants executed the promissory note and mortgage at issue in 2005. Later that year, the mortgage was assigned to the plaintiff. The defendants first began to fall behind on their mortgage payments in January, 2010. At that time, a loan servicing agent for the plaintiff reached out to the defendants and offered them a plan to reduce their monthly payments. The defendants made payments in accordance with that plan for several months, but the plaintiff rescinded the plan because it determined that the new payments were no longer sufficient. Over the next few years, the plaintiff offered several other payment plans or trial modifications, each of which the plaintiff later rescinded despite the defendants' compliance as to the requested payments. In one instance, the plaintiff rescinded a payment plan after the defendants were one day late in filing requested paperwork. In late 2013, the plaintiff's servicer erroneously informed the defendants' homeowners insurer that they were no longer living at the property, which resulted in the defendants' insurance premiums rising from $900 to over $4000 a year, exacerbating the defendants' already challenging financial circumstances. Ultimately, none of the plaintiff's offered payment plans or trial modifications resulted in a permanent and binding modification of the defendants' mortgage or their obligations under the note. Rather than continue to work with the defendants, the plaintiff instead notified the defendants that they were in default under the terms of the note, accelerated the debt, and declared the note due in full.

The plaintiff commenced the present foreclosure action in February, 2014. The parties participated in the court-sponsored foreclosure mediation program, but were unable to reach any resolution. After the mediation period terminated, the defendants filed their answer to the foreclosure complaint on April 17, 2015, which included three special defenses and three counterclaims.

The counterclaims alleged causes of action against the plaintiff sounding in negligence; a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.; and unjust enrichment. The special defenses alleged equitable estoppel, unjust enrichment, and unclean hands.[4] According to the defendants, during negotiations with the plaintiff, including those that had occurred prior to the commencement of the foreclosure action, the plaintiff and its servicing agent failed to act in a fair, equitable, and honest manner, and their actions hindered the defendants' ability to obtain a binding loan modification.[5] Consequently, the defendants argued, the total amount of the debt owed in connection with the mortgage default unnecessarily increased.

The plaintiff moved to strike the defendants' counterclaims and special defenses, and the defendants opposed the motion. Following a hearing, on December 28, 2015, the court, *Dubay*, *J.*, issued a memorandum of decision granting the motion to strike.

With respect to the counterclaims at issue on appeal, the court summarized the defendants' factual allegations as follows: "The defendants allege that the plaintiff was negligent in some of the following ways: (1) the plaintiff's servicer erroneously informed the defendants' insurance company that they were not living in the house which led to the cancellation of their insurance policy, (2) during mediation, the plaintiff's representative often showed up late, (3) in mediation sessions, the defendants were routinely provided with conflicting information by the plaintiff's representative, and (4) through a combination of duplicative, exhaustive, and ever-changing requests, the plaintiff took years to evaluate the defendants for a loan modification. The defendants allege that the plaintiff violated CUTPA in some of the following ways: (1) by repeatedly requesting duplicative, unnecessary documentation updates to documentation during the modification process, (2) by communicating false information to the defendants' insurance carrier, and (3) making material misrepresentations, including, but not limited to, misrepresenting to the defendants the availability of principal forgiveness." According to the court, however, the defendants failed to assert any factual allegations in their counterclaims that had any reasonable nexus to the making, validity, or enforcement of the note or mortgage. The court reasoned that the counterclaims

must be stricken because "[a]ll of the conduct alleged in the defendants' counterclaims relate to activities that took place during the foreclosure mediation program and, therefore, subsequent to the execution of the note or mortgage." The court further suggested that the defendants' claims would be viable only if the defendants had reached an agreement to replace or modify the terms of the note or mortgage and the plaintiff sought foreclosure in contravention of that modified agreement.

With respect to the defendants' special defenses, the court reasoned that they also were legally insufficient. The court first acknowledged that the defendants' allegations were sufficient to support their equitable estoppel counterclaim because, if viewed in a light most favorable to the defendants, they established that the plaintiff's servicer had engaged in conduct "calculated to induce the defendants to believe that they were going to get a loan modification . . . ." The court nevertheless stated that the facts alleged did not directly address the making, validity, or enforcement of the note or mortgage at issue because there was no allegation that the plaintiff's actions in any way invalidated or rendered unenforceable the original loan documents or affected the plaintiff's authority to foreclose under the existing note and mortgage. The court stated: "In the present case, it seems that at one point the parties entered into a modification, however, the allegations lead the court to believe that it was not a permanent modification and the defendants defaulted under the modified agreement, and, therefore, the plaintiff was able to seek the equitable relief of foreclosure." Similarly, the court found that the defendants had alleged sufficient facts to support a special defense of unclean hands, which included the preforeclosure actions of the plaintiff's servicer in negotiating a loan modification agreement. The court concluded, however, that the allegations did not relate to the plaintiff's ability to enforce the existing note and mortgage or to affect their validity.

On February 5, 2016, the court, *Peck, J.*, granted a motion filed by the plaintiff seeking summary judgment as to liability only on the foreclosure complaint. On April 11, 2016, the court, *Wahla, J.*, rendered a judgment of strict foreclosure in favor of the plaintiff. At that time, the court also rendered judgment in favor of the plaintiff on the stricken counterclaims. Piper thereafter filed the present appeal.[6]

I next set forth the applicable legal principles governing our review of the court's decision to grant the motion to strike. A motion to strike is the proper vehicle for challenging the legal sufficiency of all or part of a complaint, counterclaim, or answer, including any special defenses asserted. See *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 180, 73 A.3d 742 (2013). "Because a motion to strike challenges the legal suffi-

ciency of a pleading . . . and, consequently, requires no factual findings by the trial court, our review of the court's ruling [on a motion to strike] is plenary." (Internal quotation marks omitted.) *Kumah* v. *Brown*, 307 Conn. 620, 626, 58 A.3d 247 (2013). I am mindful that, in reviewing the court's decision to strike portions of a defendant's counterclaim or special defenses, we must take the facts alleged in the challenged pleading as admitted and view them in a light most favorable to upholding the sufficiency of the pleadings, including those facts necessarily implied from the allegations expressly asserted. See *Connecticut National Bank* v. *Douglas*, 221 Conn. 530, 536, 606 A.2d 684 (1992); *JP Morgan Chase Bank, Trustee* v. *Rodrigues*, 109 Conn. App. 125, 128–29, 952 A.2d 56 (2008). "In an appeal from the granting of a motion to strike, we must read the allegations of the [challenged pleading] generously to sustain its viability, if possible . . . ." (Internal quotation marks omitted.) *Sherwood* v. *Danbury Hospital*, 252 Conn. 193, 212, 746 A.2d 730 (2000).

"The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." (Internal quotation marks omitted.) *TD Bank, N.A.* v. *M.J. Holdings, LLC*, 143 Conn. App. 322, 326, 71 A.3d 541 (2013). Our courts have recognized a distinction between equitable defenses and defenses at law. "Historically, defenses [at law] to a foreclosure action have been limited to payment, discharge, release or satisfaction . . . or, if there had never been a valid lien. . . . A valid special defense *at law* to a foreclosure proceeding must be legally sufficient *and address the making, validity or enforcement of the mortgage, the note, or both.* . . . Where the plaintiff's conduct is inequitable, a court may withhold foreclosure on equitable considerations and principles. . . . [O]ur courts have permitted several equitable defenses to a foreclosure action. [I]f the mortgagor is prevented by accident, mistake or fraud, from fulfilling a condition of the mortgage, foreclosure cannot be had . . . . Other equitable defenses that our Supreme Court has recognized in foreclosure actions include unconscionability . . . abandonment of security . . . and usury." (Citation omitted; emphasis added; internal quotation marks omitted.) *LaSalle National Bank* v. *Freshfield Meadows, LLC*, 69 Conn. App. 824, 833, 798 A.2d 445 (2002).

With regard to counterclaims, a court may grant a party's motion to strike a counterclaim on the ground that it is improperly joined with the plaintiff's primary action in contravention of Practice Book §10-10. See *U.S. Bank National Assn.* v. *Sorrentino*, supra, 158 Conn. App. 95; *JP Morgan Chase Bank, Trustee* v. *Rodrigues*, supra, 109 Conn. App. 132–33 (affirming motion to strike defendants' counterclaim because it did not arise from same transaction). Practice Book § 10-10 provides in relevant part that "[i]n any action

for legal or equitable relief, any defendant may file counterclaims against any plaintiff . . . provided that each such counterclaim . . . arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint . . . ." Practice Book § 10-10 "is a common-sense rule designed to permit the joinder of closely related claims where such joinder is in the best interests of judicial economy. . . . The transaction test is one of practicality, and the trial court's determination as to whether that test has been met ought not be disturbed except for an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *JP Morgan Chase Bank, Trustee* v. *Rodrigues*, supra, 131–32.

It is generally well accepted in our foreclosure jurisprudence that a court may utilize the making, validity, or enforcement test in assessing not only the viability of special defenses, but also in applying the transaction test in Practice Book § 10-10 to determine whether counterclaims asserted by a foreclosure defendant are sufficiently related to consider them properly joined. *CitiMortgage, Inc.* v. *Rey*, 150 Conn. App. 595, 603, 92 A.3d 278, cert. denied, 314 Conn. 905, 99 A.3d 635 (2014). Although courts require that a viable legal special defense *directly* attack the "making, validity or enforcement" of the mortgage, in assessing counterclaims, our courts generally have applied a more relaxed standard, requiring only that the subject of the counterclaims have a "sufficient connection" or "nexus" to the making, validity, or enforcement of the note and mortgage to pass the transaction test. Id. Accordingly, although in a foreclosure action a proper application of the transaction test set forth in Practice Book § 10-10 "may require an assessment of whether the counterclaim in question relates to the making, validity or enforcement of the subject note and mortgage, there can be such a nexus even though the counterclaim may not directly attack the making, validity or enforcement of the mortgage and note which form the basis of the foreclosure complaint." Id., 606. With these principles in mind, I turn to whether, in the present case, the defendants' special defenses and counterclaims were properly stricken by the court.

I

I first consider whether either of the defendants' special defenses directly related to the making, validity, or enforcement of the note or mortgage. The trial court and the majority answer this question in the negative, concluding that the allegations giving rise to the special defenses took place during loan modification negotiations or foreclosure mediation, both of which came after the execution of the note and mortgage and the latter of which came after the foreclosure action was commenced. I conclude, however, that the special defenses are legally sufficient and, thus, were improperly stricken.

The trial court, in granting the motion to strike, reasoned that because no formal modification ever was agreed to by the parties, none of the special defenses raised by the defendants directly relates to the making, validity, or enforcement of the note or mortgage. Having carefully reviewed the relevant pleadings, however, I am not persuaded that the trial court construed the allegations in the special defenses in a light most favorable to upholding their legal sufficiency, particularly with respect to the whether the allegations related to the enforcement of the note and mortgage.

For example, at one point in its analysis, the court states that "it seems that at one point the parties entered into a [loan] modification." The court is referring to the following factual allegation, which was incorporated into both the special defenses and the counterclaims: "In April, 2012, [the] defendants contacted the state banking commission, which intervened on [the] defendants' behalf, *resulting in an immediate modification being received.*" (Emphasis added.) Rather than accepting the defendants' allegation as true for purposes of evaluating the legal sufficiency of the defendants' pleading, the court did the opposite, construing the allegation in such a way as to "leave the court to believe that it was not a permanent modification and the defendants defaulted under the modified agreement, and, therefore, the plaintiff was able to seek the equitable relief of foreclosure." Thus, the court apparently attempts to resolve a factual dispute as to whether a modification had occurred, and did so in favor of the plaintiff.

Furthermore, the court, like the majority, relied in large part on *U.S. Bank National Assn.* v. *Sorrentino*, supra, 158 Conn. App. 97, for the proposition that allegations of improper conduct occurring during mediation and modification negotiations lacks any reasonable nexus to the making, validity, or enforcement of the note or mortgage. This interpretation of our holding in *U.S. Bank National Assn.* is, in my view, overly broad.

Unlike in the present case, the court in *U.S. Bank National Assn.* was faced only with allegations of wrongdoing or misconduct by the foreclosing bank that occurred during the court-sponsored foreclosure mediation process, which occurred well after the action to foreclose the mortgage already had commenced. By contrast, the defendants in the present case have alleged that the plaintiff engaged in dishonest and deceptive practices prior to its having initiated the foreclosure action, including the possibility that the plaintiff failed to honor the terms of a loan modification agreement. Accordingly, unlike in *U.S. Bank National Assn.*, the allegations of preforeclosure conduct by the plaintiff in the present case had a far more obvious and direct connection to the enforcement of the note or mortgage.[7]

Moreover, the majority's suggestion that the defendants' special defenses could be viable only if the defendants actually had reached a modification agreement would unnecessarily shield mortgagees or their agents from judicial scrutiny of potentially unscrupulous behavior that may have directly resulted in the foreclosure action. Courts have not always strictly applied the making, validity, or enforcement requirement in evaluating the sufficiency of equitable special defenses such as those raised here, particularly if a strict application would offend traditional notions of equity. For example, in *Thompson* v. *Orcutt*, 257 Conn. 301, 313, 777 A.2d 670 (2001), our Supreme Court clarified that an equitable defense of unclean hands need not strictly relate to the making, validity, or enforcement of the note or mortgage provided the allegations set forth were " 'directly and inseparably connected' " to the foreclosure action. In reversing this court's decision, which narrowly focused upon the making, validity, or enforcement test, the Supreme Court observed "[b]ecause the doctrine of unclean hands exists to safeguard the integrity of the court . . . [w]here a plaintiff's claim grows out of or depends upon or is inseparably connected with his own prior fraud, a court of equity will, in general, deny him any relief, and will leave him to whatever remedies and defenses at law he may have." (Citations omitted; internal quotation marks omitted.) Id., 310.

Finally, I do not share the concern expressed by the majority that allowing special defenses or counterclaims related to the preforeclosure actions of mortgagees would significantly impact judicial economy or unnecessarily open the floodgates to convoluted claims that will unduly delay foreclosure actions. I am confident that our courts will be able to discern efficiently between claims that are well pleaded and supported by specific factual allegations and those that are merely frivolous and intended only to create unneeded delay. Further, courts readily can differentiate between allegations involving inequitable practices that may have occurred prior to the commencement of the foreclosure action and that implicate enforcement, such as in the present case, and more attenuated allegations related solely to mediation occurring after the commencement of litigation. See *U.S. Bank National Assn.* v. *Sorrentino*, supra, 158 Conn. App. 95–97.

Here, the court found that the allegations in the pleadings were wholly sufficient to support the special defenses of estoppel and unclean hands, but only failed because they did not directly relate to the making, validity, or enforcement of the note or mortgage. I would conclude, however, that the allegations of deceitful and unfair practices leading to the filing of the foreclosure action were sufficiently related to the enforcement of the note and mortgage, and they were directly and inseparably connected to the foreclosure action.

Accordingly, I would reverse the court's decision to strike both special defenses.

II

Finally, I address Piper's claim that the trial court improperly granted the motion to strike as to the defendants' counterclaims. The court concluded that the defendants failed to assert in their counterclaims factual allegations that demonstrated some reasonable nexus between those allegations and the making, validity, or enforcement of the mortgage or note. I disagree, and, therefore, would also reverse the court's judgment on the counterclaims.

"[T]his court has clarified that a proper application of Practice Book § 10-10 in a foreclosure context requires consideration of whether a counterclaim has some reasonable nexus to, rather than directly attacks, the making, validity or enforcement of the mortgage or note." Id., 96. "[R]elevant considerations in determining whether the transaction test has been met include whether the same issues of fact and law are presented by the complaint and the [counter]claim and whether separate trials on each of the respective claims would involve a substantial duplication of effort by the parties and the courts." (Internal quotation marks omitted.) *CitiMortgage, Inc.* v. *Rey*, supra, 150 Conn. App. 606. I believe that proper application of the transaction test demonstrates that both of the defendants' counterclaims were properly joined.

The counterclaims asserted by the defendants sounded in negligence and a violation of CUTPA based upon the conduct of plaintiff's servicing agent during mediation and modification negotiations that culminated in the present foreclosure action. In support of their negligence claim, the defendants alleged, inter alia, that the plaintiff erroneously informed the defendants' homeowners insurance company of false information that resulted in the cancellation of their policy and an increase in premiums, and the plaintiff unnecessarily delayed the defendants' request for a loan modification by making duplicative and changing requests for information. In support of their CUTPA claim, the defendants alleged, inter alia, that throughout modification negotiations, the plaintiff repeatedly requested duplicative and unnecessary documentation updates and made material misrepresentations, including communicating false information to the defendants' insurance carrier.

The court did not strike the counterclaims because they failed to state cognizable causes of action, but, rather, because they did not have a proper nexus either to the making, validity, or enforcement of the note and mortgage. For the same reasons that I articulated with respect to the special defenses, however, I believe that the factual underpinnings set forth in the defendants' counterclaims directly relate to the plaintiff's prefore-

closure efforts to enforce its rights under the existing note and mortgage. Accordingly, the counterclaims were properly joined and should have survived the plaintiff's motion to strike.

In sum, I would reverse the judgment of the trial court granting the motion to strike and, accordingly, would reverse the judgment of strict foreclosure and remand the case for further proceedings.

[1] A number of subsequent encumbrancers with respect to the subject property in this foreclosure action also were named as defendants. For convenience, I refer in this opinion to Blowers and Piper as the defendants and to Piper, the sole appellant, individually by name where appropriate.

[2] My conclusion should not be construed as a comment on the relative factual strength of the counterclaims or special defenses, or whether they could withstand a motion for summary judgment.

[3] Because I conclude that the trial court misapplied the making, validity, or enforcement test to the counterclaims and special defenses, and would reverse the judgment on that basis, I do not reach the Piper's additional claim, which asks us to abandon our existing jurisprudence in favor of what he describes as a more "straightforward version of the transaction test."

[4] Prior to the court's ruling on the motion to strike, the defendants withdrew their special defense and counterclaim sounding in unjust enrichment. Accordingly, I limit my discussion to the remaining defenses and counterclaims.

[5] The defendants acknowledged in their opposition to the motion to strike that the same basic facts and alleged misconduct underlie each of their special defenses and counterclaims. They summarized those facts as follows: "Prior to commencing the instant foreclosure, and over a period of several years, the conduct the plaintiff engaged in included the following: entering into a trial modification which it later refused to convert to a permanent modification despite full compliance by the defendants with the terms of the trial modification; offering and then refusing to accept a modification for a pretextual reason . . . offering, accepting, and then unilaterally altering modifications in material respects without prior discussion or agreement of the defendants; refusing to accept a lump sum payment of an escrow shortfall which resulted from the plaintiff's servicer miscalculation; and erroneously informing the defendants' insurance carrier that they were not living in the house, resulting in a cancellation thereof and force-placed coverage." The defendants also made a number of allegations with respect to the plaintiff's conduct during court-sponsored mediation.

[6] Piper indicated on his appeal form that he intended to challenge the court's rulings on the motion to strike and the motion for summary judgment, as well as the judgment of strict foreclosure. The claims actually raised on appeal, however, as reflected in Piper's statement of issues, are limited to the court's decision to grant the motion to strike the defendants' special defenses and counterclaims.

[7] I recognize that our jurisprudence is somewhat opaque with regard to the meaning of enforcement in this context and that there can be reasonable and differing views about how to interpret that term in the foreclosure context. For example, enforcement could be construed narrowly to refer only to the ability of a mortgagee to enforce the note or mortgage or, more broadly, to include a mortgagee's actions related to such enforcement. In the absence of needed clarification by our Supreme Court, and given the equitable nature of foreclosure proceedings, I believe that a broader interpretation is appropriate.